WIGGINTON, Judge.
This appeal is from an order rendered by appellee Insurance Commissioner of Florida amending, and as amended approving, a filing respecting rates to be charged for workmen’s compensation insurance submitted by the National Council on Compensation Insurance in behalf of its stock company members and subscribers. The filing is entitled “Plan for Modification of Individual Risks Expense Provisions.” This filing is intended to be an addition to the rules and rating programs previously approved by the Commissioner relating to premiums charged for workmen’s compensation insurance sold in Florida. The appeal is taken pursuant to the provisions of the applicable statute.[1]
The National Council on Compensation Insurance is a voluntary, non-profit, unincorporated association of insurance companies which write workmen’s compensation insurance, and is licensed in Florida as a rating organization pursuant to the applicable law.[2] Included in its membership are both stock companies and non-stock companies, the latter group consisting of mutual companies and associations known as reciprocal exchanges. Among the functions of the National Council are the formulation of uniform classifications and policy forms, and the collection and analysis of loss and expense experience with respect to workmen’s compensation insurance. All members of the National Council have authorized the Insurance Commissioner to accept filings made in their behalf pursuant to the requirements of law and the constitution of the National Council.
The filing or rating plan here in question was submitted by the National Council only on behalf of its stock company members and subscribers, and without the approval of its mutual and reciprocal members and subscribers. In submitting the questioned filing to the Insurance Commissioner for his consideration, the National Council advised of the interest in the filing by the non-stock members and subscribers of the Council, and their desire that a hearing be granted on the filing before it is considered for approval. Such hearing was granted by the Commissioner and testimony both in support of and in opposition to the filing was submitted by the interested parties. It *868 was upon consideration of the filing and the evidence adduced before him that the Commissioner rendered his order of approval which is the subject of this appeal.
The principal issue presented by appellants, and the only one which we consider to have sufficient merit to require discussion, is whether the Commissioner erred as a matter of law in approving the filing made by the National Council in behalf of its stock company members and subscribers. Appellants’ charge of illegality is grounded upon the contention that the modification plan under consideration does not contain standards for measuring variations in the expense provisions provided in the applicable Premium Discount or Retrospective Rating Plan rules and rating values as required by law, and therefore does not constitute a rating plan within the purview of the statute which the Commissioner is authorized to approve.
The Commissioner’s authority with respect to approval of rate filings is circumscribed and controlled by F.S. Chapter 627, F.S.A. The statute provides that in determining whether a rate filing should be approved or not the Commissioner must give consideration only to the applicable standards and factors referred to in F.S. § 627.081, F.S.A., as to casualty and surety insurance coverages, and emphasizes the importance of such plans containing standards for measuring variations in hazards or expense provisions, or both.[3]
F.S. Section 627.081, F.S.A., relating to the making of rates for casualty insurance provides that classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for measuring variations in hazards or expense provisions, or both.[4]
*869 Under the rate plans heretofore approved by the Commissioner and presently in effect in Florida one purchasing workmen’s compensation insurance has the option of electing to purchase at the fixed standard manual rate calculated in advance, or under what is termed a retrospective rating plan by which the premium is determined at the expiration of the policy term in accordance with an approved and regulated formula agreed upon at the time the policy issues. The amount of premium ultimately developed under this plan may be greater or less than the standard rate, depending on the insured’s loss experience during the policy term. All workmen’s compensation insurance policies are mandatorily subject to an experience rating plan which produces a modification of the usual rates for such risks based on its own loss experience when its annual premium reaches an average of $750.00 for a period of two years. In addition, the schedule of premium discounts currently authorized for and mandatorily applied result in substantial discounts which increase as the size of the premium increases. The premium discount rule under which discounts are allowed is justified upon the theory that as the premium for a policy increases, the insurer’s expenses of servicing the insurance contract becomes proportionately less.
The essential feature of the rating plan under assault by appellants is as follows:
“Plan for Modification of Individual Risk Expense Provisions
“Any risk for which the annual Standard Premium to be developed on operations to be insured by a single insurance carrier or by two or more carriers under the same management is expected to be at least $25,000 may be subject to modification of the expense provisions provided in the applicable Premium Discount or Retrospective Rating Plan rules and rating values. The modified expense provision (exclusive of tax) shall be based on any reduction in acquisition cost or in the allowances for administration and audit, inspection and loss adjustment expenses reflecting conditions of management, cooperation, location, physical concentration, quality of facilities and wage levels of the risk. In no event shall such modified expense provision produce a result greater than the expense provisions (exclusive of tax) underlying the Stock Premium Discount percentages on the state rate pages or less than the following percentages of the estimated annual Standard Premium which are inclusive of profit and contingencies but exclusive of tax.
First $ 1,000-20.0%
Next 4,000-15.0%
Next 95,000-10.0%
Over 100,000- 7.5%
Such modification reflecting the .individual expense requirements for the risk shall be filed with and authorized by the Florida Compensation Rating Bureau.”
At the outset it must be noted that the questioned plan has several characteristics which distinguish it from rating plans currently in effect in Florida. The plan is available only to stock insurance companies writing workmen’s compensation insurance in this state, and is applicable only to risks where the expected annual premium equals or exceeds the sum of $25,000. Under this plan, it is optional with the insurer whether any modification of the premium to be charged shall be granted in a given case, thereby enabling the insurer to grant a modification of the premium to one customer and withhold it from another.
From the evidence it appears that the dollar premium paid for workmen’s compensation insurance is divided into two parts, one part for use in paying claims, and the remaining smaller part for expense of the insurer in acquiring and servicing the policy. Under a rate filing made by the National Council, and approved by the *870 Insurance Commissioner on June 21, 1963, the expense portion of the premium dollar on risks where the total annual premium is below $1,000 is made up- of the following items:
17.5% 1. Acquisition Cost
7.5% 2. General Administration and Audit
3. Inspection and Safety-Engineering-O o4
4. Taxes lO c\5
5. Profit and Contingencies lO <n¡
6. Loss Adjustment Expense Tj" od
The rate filing now under consideration applies only to the expense portion of each premium dollar made up of the items above specified, and has no application to the remaining portion of the premium devoted to the payment of claims. It is also apparent that the only items of the expense provision subject to modification (or discount) under the questioned filing are those relating to acquisition cost, general administration and audit, inspection and safety engineering, and loss adjustment expense. Under this plan the underwriter may determine that there will be an anticipated savings to the company in the above specified items of expense in connection with a given risk due to expected cooperation, conditions of management, location, physical concentration, quality of facilities and wage levels of the risk or concern for whom the insurance policy will issue. The primary purpose of the plan is to permit the underwriter to exercise its own judgment in determining in advance how much it will cost to acquire and service the insurance policy to be issued, taking into account the factors specified in the plan, and based upon that determination to grant a reduction in the amount of premium which would otherwise be charged under filings presently in effect, limited only by the maximum reduction specified in the plan. As testified to by an expert witness for one of the ap-pellee stock companies:
“This plan permits the application of both actuarial and underwriting judgment to the expense needs. It follows recognized rating principles long used in industry. It achieves an expense loading which is not solely derived from cold mathematical formulas. It permits — I wish to say right here — it permits the exercise of judgment in arriving at expenses. The variable expense items that the plan is talking about are acquisition, administration, and audit, engineering and loss adjustment expense, as these expense items are affected by the standards of management, cooperation, location, physical concentration, quality of facilities and wage levels. You will find these items stated in the early part of the plan. These standards are not just words. They are objective standards for the evaluation of expense requirements.”
Appellants argue that the plan in question illegally substitutes the unbridled, unrestrained and unregulated judgment of the stock companies for the standards by which variations in expense provisions may be measured required by F.S. Section 627.081 (c), F.S.A. They insist that such plan will result in rates that are either inadequate or unfairly discriminatory in contravention of F.S. Section 627.081(d), F.S.A. Appellants further contend that the plan will permit stock companies to grant rebates to its workmen’s compensation insurance customers contrary to the prohibitions of the statute.[5] It is pointed out that the only circum *871 stance under which deviations from manual rates are permitted by the statute is where the request for such deviation is made in advance, justified, approved by the Commissioner and applied equally to all insureds similarly positioned. These contentions are well-founded and must be sustained.
It is appellees’ position that the plan under attack does contain the standards required by statute for measuring variations in the expense provisions of each individual risk considered by the underwriter. To support this position appellees rely upon the provision of the plan which permits the underwriter to take into consideration the conditions of management, cooperation, location, physical concentration, quality of facilities, and wage levels of the risk in determining which items of the expense provision of the premium may be discounted. The provisions erroneously referred to by appellees as "standards” are nothing more nor less than factors which might properly be considered in evaluating the expense provisions of a particular risk. The plan contains no standards by which variations between risks in the factors of acquisition cost, cost of administration and audit, or for inspection and loss adjustment can be measured or evaluated, and when applied to the specified factors will result in uniform and non-discriminatory rates.
In their brief appellees tell us the plan contemplates that a risk under excellent management that will extend full cooperation to its insurance carrier, will decrease the expense incurred by the carrier in administration of the affairs of the risk and decrease the cost of audit to determine the amount of the premium to be paid by the risk. They therefore assert that the plan contains standards with respect to management and cooperation. Appellees do not tell us, however, where in the plan is contained a definitive standard by which another underwriter, the Commissioner or the Court can determine whether the management or cooperation of a given risk is excellent, fair, or poor. Appellees say the plan also contemplates that an insurance policy written for a risk whose operation is concentrated in a small area within a few plants will be less expensive to administer and audit than a risk whose operation is spread over a large area and in numerous plants. Conceding such argument to be valid, we look in vain to find within the plan a definitive standard by which to determine what constitutes a large or small area of operation, or a few as contrasted to a large number of plants. Lastly, ap- *872 pellees reason that the quality of facilities and wage levels of the risk will have a direct hearing upon expenses of a carrier in administering, auditing and adjusting claims of the risk. Again assuming such ■conclusion to be sound, we fail to find in the plan any standard by which either quality of facilities or wage levels of the employees may be measured or evaluated. The factors to be considered, and the weight to be accorded each, in determining the amount, if any, of discount in the premium to be charged a given risk is discretionary with the underwriter. Because of an absence of .standards, the discretion of the underwriter is not susceptible of analysis or test and must therefore be held to be discriminatory. We are forced to the conclusion that the plan submitted by appellees and ■approved by the Commissioner falls far ■short of meeting the provision of the statute which requires that every plan for modification of rates to be charged for workmen’s compensation insurance must ■establish standards for measuring variations in expense provisions of the premium to be charged. Because of this fatal deficiency the plan is inadequate and fails to meet the requirements of law.
The attractive feature of the proposed plan, and the one which appellees most strongly emphasize, is that it will enable the stock companies to pass on to its insureds the anticipated savings in the cost of writing and servicing the policies issued by it, and will enable them to compete on an equal basis with mutual insurance companies and reciprocal exchanges writing workmen’s compensation insurance in Florida. Although the objectives to be attained by the promulgation of such a plan are indeed laudable and should be encouraged, this cannot be done at the risk of opening the door to the possibility of abuses within the industry which will more than offset the benefits to be gained thereby. As pointed out by appellants, if reductions in premium charges can be made by stock companies under this plan in accordance with the unrestrained judgment of each individual underwriter, the plan is susceptible of being used as a tool for pirating business from competitors by allowing discounts which result in premiums wholly inadequate to meet any reasonable actuarial standards. It will also permit an insurance company to grant a premium discount or rebate to a customer contrary to the provisions of law which condemn such activity as unfair competition and discriminatory in nature. If the laudable purposes sought to be accomplished by appellees are to be realized, it must be by a plan containing the necessary standards for measuring variations in expense provisions of risks to be insured as required by existing law, or by amending our statutes to permit a rating plan to be approved which contains no such standards.
The issues involved in this appeal relate to a highly complicated phase of an extremely sensitive industry. We recognize that the statutes of this state regulating the insurance industry vest in the Insurance Commissioner a wide range of discretion in discharging the duties and responsibilities imposed upon him. If the rate filing in question had been approved by the Commissioner in the exercise of his sound discretion and supported by competent and substantial evidence in the record, we would be extremely reluctant to disturb that finding. Such, however, is not the case. The issue involved here is whether the rating plan in question conforms with the essential requirements of the statute governing the promulgation and approval of such plans. The question is one of statutory construction, the solution of which calls more for the performance of a judicial as distinguished from an administrative function. In finding and holding that the rating plan under consideration is legally insufficient, we are neither invading the discretionary orbit of the Commissioner’s functions nor substituting our judgment for his on the facts.
For the reasons hereinabove stated, the order appealed is reversed and the cause *873 remanded with directions that an appropriate order be entered in accordance with the views expressed herein.
CARROLL, DONALD K., Acting C. J., and FITZPATRICK, Associate Judge, concur.

. F.S. § 627.391, F.S.A.

. F.S. § 627.221, F.S.A.

. “Basis of approval or disapproval of filing; scope of disapproval power
“(1) In determining at any time whether to approve or disapprove a filing, or to permit a filing otherwise to become effective, the commissioner shall give consideration only to the applicable standards and factors referred to in § 627.061 as to property insurance coverages, and as referred to in § 627.081 as to casualty and surety insurance coverages. *****
“(3) As to casualty and surety insurances no manual of classifications, rule, rating plan, rating system, plan of operation or any modification of any of the foregoing which establishes standards for measuring variations in hazards or expense provisions, or both, shall be disapproved if the rates thereby produced meet the requirements of this chapter.” F.S. § 627.151, F.S.A.

. “Making of rates; casualty and surety
“(1) All rates as to casualty and surety insurances shall be made in accordance with the following provisions:
“(a) Due consideration shall be given to past and prospective loss experience within and outside this state, to catastrophe hazards, if any, to a reasonable margin for underwriting profit and contingencies, to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members or subscribers, to past and prospective expenses both countrywide and those specially applicable to this state, and to all other relevant factors within and outside this state.
“(b) The systems of expense provisions included in the rates for use by any insurer or group of insurers may differ from those of other insurers or groups of insurers to reflect the requirements of the operating methods of any such insurer or group with respect to any kind of insurance, or with respect to any subdivision or combination thereof for which subdivision or combination separate expense provisions are applicable.
“(c) Bisks may be grouped by classifications for the establishment of rates and minimum premiums. Classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for measuring variations in hazards or expense provisions, or both. Such standards may measure any differences among risks that can be demonstrated to have a probable effect upon losses or expenses.
“(d) Bates shall not be excessive, inadequate or unfairly discriminatory.
“(2) Except to the extent necessary to meet the provisions of subsection (1) (d), uniformity among insurers in any matters within the scope of this section is neither required nor prohibited.” F.S. § 627.081, F.S.A.

. “Deviations; casualty and surety
“(1) Every member of or subscriber to a casualty or surety insurance rating organization shall adhere to the filings made on its behalf by such organization; except that any" such insurer may make written application to the commissioner for. permission to file a uniform percentage decrease or increase to be applied to the premiums produced by the rating system so filed for a kind of insurance, or for a dass of insurance which is found by the commissioner to be a proper rating unit for the application of such uniform percentage decrease or in *871 crease, or for a subdivisión of a kind of insurance:
“(a) Comprised of a group of manual classifications which is treated as a separate unit for rate making purposes, or
“(b) For which separate expense provisions are included in the filings of the rating organization. Such application shall specify the basis for the modification and shall be accompanied by the data upon which the applicant relies. A copy of the application and data shall be sent simultaneously to the rating organization.
“(2) The commissioner shall set a time and place for a hearing at which the insurer and the rating organization may be heard and shall give them not less than ten days’ written notice thereof. In the event the commissioner is advised by the rating organization that it does not desire a hearing he may, upon the consent of the applicant, waive the hearing.
“(3) In considering the application for permission to file the deviation, the commissioner shall give consideration to the principles for rate making as set forth in § 627.081. The commissioner shall issue an order permitting the modification for such insurer to be filed if he finds it to be justified and it shall thereupon become effective. He shall issue an order denying such application if he finds that the modification is not justified or that the resulting premiums would be excessive, inadequate or unfairly discriminatory.
“(4) Each deviation permitted to be filed shall be effective for a period of one year from the date of such permission unless terminated sooner with the approval of the commissioner, but no such termination shall be effectuated until after the deviation has been in effect for a period of at least six months.” F.S. § 627.211, F.S.A.