**WOOD COUNTY BANK, a state-chartered commercial bank, Plaintiff,**

v.

**William B. CAMP, Comptroller of the Currency of the United States, Defendant,**

and

**Union Central National Bank, Defendant-Intervenor.**

**Civ. A. No. 1277–72.**

United States District Court,
District of Columbia.

Oct. 3, 1972.

On Motion to Stay Oct. 5, 1972.

James F. Bell, Washington, D. C., for plaintiff.

Eugene J. Metzger, Washington, D. C., for defendant.

## MEMORANDUM OPINION
## AND ORDER

CHARLES R. RICHEY, District Judge.

This action arises out of a Complaint for a Declaratory Judgment and Injunctive Relief under Section 36 of the National Bank Act (12 U.S.C. § 36) and Section One of the Declaratory Judgment Act (28 U.S.C. § 2201), by Plaintiff Wood County Bank, a West Virginia state banking association, against Defendant William B. Camp, the Comptroller of the Currency of the United States, and Defendant-Intervenor, Union Central National Bank, the successful applicant for the bank charter at issue here. Plaintiff alleges the existence of a federal question and that the amount in controversy here exceeds, exclusive of interest and costs, the sum of $10,000.-00.

Plaintiff seeks to set aside the Defendant Comptroller's approval of a bank charter for Defendant-Intervenor Union Central National Bank. Plaintiff claims that the Defendant Comptroller acted arbitrarily and capriciously and abused his discretion in approving the proposed banking facility based on the economic data contained in the Administrative Record, and that the Comptroller acted unlawfully in failing to issue findings of fact and a reasoned opinion disclosing the legal and factual bases for his action.

The Comptroller argues that he has never made such findings of fact in support of bank charter decisions and as a matter of law does not feel required to make such findings.

### FACTUAL BACKGROUND

1. In early 1971, the Union Trust Bank of Parkersburg, West Virginia applied to the West Virginia Board of Banking and Financial Institutions for permission to establish a banking facility to be called Union Central Bank in the Grand Central Mall, a shopping center under construction just outside Parkersburg.

2. On July 27, 1971 the Banking Board denied this application.

3. After this denial, Union Trust announced its intention to convert to a national charter and operate under the name "Union Trust National Bank," and changed the name of the proposed Mall facility to "Union Central National Bank."

4. Application was made to the Comptroller of the Currency for federal authorization for the proposed Mall bank and hearings were held upon request of Wood County Bank pursuant to the Comptroller's published regulations providing the right to request a hearing.

5. This application received preliminary approval from the Comptroller on May 25, 1972.

6. In accordance with the Comptroller's long standing policy, he issued here no findings of fact or conclusions of law in support of his decision and merely stated that "this application has been approved."

7. On June 28, 1972 Wood County Bank instituted this action seeking judicial review of the Comptroller's decision, after having been denied an application for an administrative stay.

8. On August 7, 1972 this Court granted the Motion of Union Central National Bank for Leave to Intervene as a Party Defendant and heard oral argument on Plaintiff's Motion for a Preliminary Injunction. Cross-Motions for Summary Judgment are presently pending.

### ISSUES

Plaintiff argues that the Comptroller has a legal duty to support his approval of the proposed facility with findings of fact and a well reasoned opinion, and that a preliminary injunction should issue until the case has been decided on the merits.

Defendant Comptroller contends that the pertinent provisions of the National Bank Act (12 U.S.C. §§ 26, 27) do not require that the Comptroller write an opinion or make findings of fact in sup-

port of approval of an application for a new national bank, nor are the provisions of the Administrative Procedure Act applicable here because the APA findings and conclusions sections (5 U.S. C. § 557(c)(3)(A)) only applies when a hearing is required in connection with rulemaking proceedings (5 U.S.C. § 553) or in cases of "adjudication required by statute to be determined on the record after opportunity for an agency hearing. . . ." (5 U.S.C. § 554(a)). The Comptroller argues that his procedures are investigative and not "rule-making" or adjudicatory in nature. Lastly, Defendant Comptroller also contends that if there is substantial evidence in the Administrative Record to support the conclusion of the Comptroller, then his action must be upheld.

Defendant-Intervenor Bank argues that any injunction or remand to the Comptroller would do irreparable economic harm to its new business opportunity and that the public interest of the merchants and employees of the shopping mall would be adversely affected.

## CONSTITUTIONAL REQUIREMENT FOR FINDINGS OF FACT

The Comptroller's bank charter hearings are of a similar nature to zoning hearings of the type discussed in the recent case of Capitol Hill Restoration Society v. Zoning Commission, D.C.App., 287 A.2d 101 (1972). There, the D. C. Court of Appeals held that when a proceeding before an agency assumes an adjudicatory nature the proceeding is governed by the procedural safeguards of District of Columbia Administrative Procedure Act (D.C.Code 1967, § 1–1501, et seq. Supp. IV, 1971). Among those safeguards is the requirement for findings of fact and conclusions of law.

While the Comptroller may not be directly subject to the findings and conclusions requirement of Section 8B of the Federal Administrative Procedure Act (5 U.S.C. § 551 et seq.) since he is not necessarily required to hold hearings on applications such as the one in the case at bar, he is nevertheless, required to meet certain requirements of procedural due process once a public hearing has been granted.

Whether findings of fact number among those requirements here depends on whether the hearings held in this case pursuant to 12 C.F.R. § 5.1–.14 were adjudicatory or legislative in nature.

If the hearings held were legislative in nature no findings are necessarily required. However, if adjudicatory, fundamental due process demands such findings in order to determine if the Comptroller acted within the scope of his authority and if the Comptroller's action was justifiable under the applicable standard.

As Mr. Chief Justice Hughes stated in the landmark case of Panama Refining Co. v. Ryan, 293 U.S. 388, 432, 55 S.Ct. 241, 253, 79 L.Ed. 446, 465 (1935), "due process of law requires that it shall appear that the order is within the authority of the officer, board, or commission, and, if that authority depends on determinations of fact, those determinations must be shown."

## ADJUDICATORY HEARINGS VERSUS LEGISLATIVE HEARINGS

The Comptroller contends that hearings held pursuant to 12 C.F.R. § 5.1–.14 are legislative in nature and are not held as a matter of statutory or constitutional right but merely as an investigatory aid.

A review of the relevant definitions, however, leads the Court to conclude that the Comptroller is in error, and notwithstanding whatever label he might affix, the nature of his branch bank charter hearings are adjudicatory and not legislative.

A "contested case" is defined in D.C. Code 1967, § 1–1502(8) (Supp. IV, 1971), as

"[A] proceeding before the Commissioner, the Council, or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this Chapter),

or by constitutional right, to be determined after a hearing before the Commissioner or the Council or before an agency. . . ."

"Contested case" is synonymous with "adjudication" as defined in the Federal Administrative Procedure Act, 5 U.S.C. § 551(7) (1970), except in rate-making procedures. *Capitol Hill, supra,* 287 A.2d at 104.

In the case of Philadelphia Co. v. Securities and Exchange Commission, 84 U.S.App.D.C. 73, 81, 175 F.2d 808, 816 (1948), vacated as moot, 337 U.S. 901, 69 S.Ct. 1047, 93 L.Ed. 1715 (1949), the United States Court of Appeals for the District of Columbia described administrative action as:

"[A]djudicatory in character if it is particular and immediate, rather than, as in the case of legislative or rule making action, general and future in effect. . . ."

In Jones v. District of Columbia, 116 U.S.App.D.C. 301, 303–304, 323 F.2d 306, 308–309 (1963) a legislative hearing was defined by the Court as relating to

"the making of a rule for the future [citing Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 53 L.Ed. 150 (1908)]. As distinguished from a judicial inquiry, it is a nonadversary proceeding which seeks to devise broad policy applicable to the public generally, or a substantial segment thereof, rather than to individual parties."

Applying these standards to the hearing held by the Comptroller in the case at bar, the Court finds that that hearing was concerned primarily with "the legal rights, duties, or privileges of specific parties," rather than general policy considerations of future applicability and, hence, was an adjudicatory proceeding. The facts that had to be resolved by the Comptroller in rendering his decision were adjudicative facts rather than legislative facts.[1]

The facts in dispute here specifically involve the particular party banks and a particular situation rather than general policy. Examples of adjudicatory facts present here are: Would the establishment of the proposed facility violate the branch banking laws of West Virginia or the National Bank Act? Is the proposed bank board capable of providing proper guidance? Is there adequate capital? Would the proposed facility create an excess of banking facilities?

In light of this finding that the hearing held was adjudicatory rather than legislative, due process requires that findings of fact be made in support of any conclusion or decision made as a consequence of said hearing. No such findings were made in this case, hence, the approval of the Comptroller was made unlawfully and is without legal effect.

While the Court is aware of a number of cases in which reviewing courts have decided bank charter controversies in this and other circuits, they have not dealt specifically with the fundamental issue raised by Plaintiff in the pleadings here, i.e., whether the Comptroller of the Currency, after holding an adjudicatory-type hearing in a contested case such as the case at bar, is compelled by the due process requirement of the Fifth Amendment to support his approval of a bank charter application with well-reasoned findings of fact.[2]

1. Adjudicative facts are the facts about the parties and their activities, businesses, and properties. Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion. [K. Davis, Administrative Law, § 7.02 at 413 (1958)].

2. Nor did the most recent case decided in our Circuit, First National Bank of Fairbanks v. Camp, 465 F.2d 586 (decided June 7, 1972) deal specifically with the issue raised here. The procedural

This Court holds today that due process does so require.

## REQUIREMENT OF FINDINGS OF FACT IN ORDER TO ASSURE ADEQUATE JUDICIAL REVIEW

In addition to the due process requirement for findings of fact, the practical reasons for requiring such findings are equally compelling.

The foremost of these is the facilitation of judicial review.

As Judge Leventhal said in the second *Environmental Defense Fund* case, Environmental Defense Fund v. Environmental Protection Agency, 465 F.2d 528 (D.C.Cir., 1972), at 537 (footnotes omitted),

"We do not demand sterile formality. In appropriate cases, if the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, we will make the reference."

However, the case at bar is *not* an appropriate case where the necessary articulation of basis can be readily discerned. The Court is confronted here with an Administrative Record of over a thousand pages of testimony, complex technical data, and recommendations of the investigating National Bank Examiner and various members of the Comptroller's staff. For the Court to properly review such a record in as complex an area as the banking field and without the benefit of the Comptroller's underlying reasoning cannot expeditiously be done. As Mr. Justice Cardozo said in United States v. Chicago, Minneapolis, St. Paul and P. & P. R. R., 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023 (1935), "We must know what a decision means before the duty becomes ours to say whether it is right or wrong." The *Fairbanks* case, *supra*, is a perfect illustration of what lengths the Courts have

been forced to go to in working with a "findingless" record. In that case with no findings to aid it, the Court of Appeals took over a year to render its decision. This Court is certain findings could have expedited that ruling. Where, as in this area, the public interest is so vital, justice delayed is truly justice denied.

■ A second important reason for requiring findings is to prevent a reviewing Court from usurping the administrative factfinding function. For a Court to refrain from such encroachment of administrative function, a Court must know what facts were found. Nor, as the Supreme Court stated in the first *Chenery* case [Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943)] can a reviewing Court uphold agency action

"merely because findings might have been made and considerations disclosed which would justify its order as an appropriate safeguard for the interests protected by the Act. There must be such a responsible finding.

\* \* \* \* \* \*

" . . . [T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained."

This principle was recently applied to decisions of the Comptroller in Pitts v. Camp, 463 F.2d 632 (4th Cir. 1972) where the Fourth Circuit remanded a bank charter application [3] to the District Court for trial *de novo* after the Comptroller twice failed to make adequate findings to support his decision. Speaking through Judge Bryan, the Court said:

"It is unnecessary, we think, to discuss the separate assignments of error

---

contentions there involved the adequacy of the Comptroller's hearing itself and not, as here, with the issue of whether findings are required to support any conclusions of the Comptroller made as a result of a hearing.

3. While this case concerned an application for the original establishment of a national bank as opposed to a branch charter application as in the case at bar, the fundamental principle discussed is equally applicable.

ascribed by the appellants to the District Court. This is because in itself the ruling of the Comptroller is unacceptable. It does not comply with the bare, fundamental principle of agency decision: that its basis must be stated. FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). *Sperry* reiterated the precept of SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943), that '[t]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed' . . . . Indeed, the review of the agency action, and relief from any error therein, assured by sections 10(a), (b), and (e)(B) of the Administrative Procedure Act, 5 U.S. C. §§ 702, 703 and 706(2), would be impossible without a statement of such grounds. That the judicial review provisions of the Act apply to the Comptroller is unmistakably written in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 156–157, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

\* \* \* \* \* \*

"Since the Comptroller has twice inadequately and inarticulately resolved the appellants' presentation, we remand the cause for a trial de novo before the District Court rather than to the Comptroller for further consideration."

A third practical reason for administrative findings is to protect against careless or arbitrary action.

As the learned Judge Stephens, formerly Chief Judge of our Court of Appeals said so convincingly over 30 years ago in the case of Saginaw Broadcasting Company v. Federal Communications Commission, 68 App.D.C. 282, 287, 96 F.2d 554, 559 (1938), cert. denied, Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391:

"When a decision is accompanied by findings of fact, the reviewing court can decide whether the decision reached by the court or commission follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence. In the absence of findings of fact the reviewing tribunal can determine neither of these things. The requirement of findings is thus far from a technicality. *On the contrary, it is to insure against Star Chamber methods, to make certain that justice shall be administered according to facts and law.* This is fully as important in respect to commissions as it is in respect of courts." (Emphasis added.)

Included in the voluminous Administrative Record before the Court is a two page memorandum by the Deputy Comptroller dated May 23, 1972 and addressed to the files recommending approval of the proposed facility. Defendant Comptroller argues that assuming findings of fact were required, this memo would suffice. On May 24 the memo was approved by the Comptroller with not so much as a hint as to his basis for approving it. (See page 17 of Defendant's Exhibit A.)

Upon such a record this Court finds that the above-mentioned memorandum together with the recommendations of the investigating National Bank Examiner and various members of the Comptroller's staff contain only ultimate facts and conclusions, and do not disclose a sufficient predicate of basic facts for a reviewing court to make a proper determination as to whether such conclusions were arbitrary or capricious, contrary to West Virginia State Law or the National Banking Act or comported with the requirements of procedural due process.

### THE PUBLIC INTEREST

At stake in this case is more than a mere personal right or privilege. The interest of the public in the area of banking is self-evident. Here, as in so many other cases, a powerful public official has made a decision affecting the

public-at-large without giving anyone the basis of his reasoning or opinion. Aside from the plain mandate of the requirements of procedural due process which this Court finds, the Comptroller did not even give lip service to, we now live in an age where the public has a right to know *why, by whom,* and *for whose benefit,* the public's business is being conducted. It is elemental that the banking industry is one of the most essential parts of our economy, and that it affects the lives of millions of our citizens. When the framers of the Constitution used the words "due process" in the Fifth Amendment, these words meant, and even more importantly mean today, that the parties to any litigation such as this, as well as the public, have the right to know. This is why the lack of any findings in this record flies so squarely against the requirements of the law and sound public policy in these modern times.

Today the trend toward requiring administrative findings is growing. Chief Judge Bazelon notes this in the recent opinion of Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 87, 439 F.2d 584, 597 (1971):

"We stand on the threshold of a new era in the history of the long and fruitful collaboration of administrative agencies and reviewing courts. For many years, courts have treated administrative policy decisions with great deference, confining judicial attention primarily to matters of procedure. On matters of substance, the courts regularly upheld agency action, with a nod in the direction of the 'substantial evidence' test, and a bow to the mysteries of administrative expertise. Courts occasionally asserted, but less often exercised, the power to set aside agency action on the ground that an impermissible factor had entered into the decision, or a crucial factor had not been considered. Gradually, however, that power has come into more frequent use, and with it,

the requirement that administrators articulate the factors on which they base their decisions."

This Court is not going to guess at those reasons which may have governed the Comptroller's approval in this case. The Court wants those reasons to be articulated so that the public might know them, and the court have them in hand as a basis for its review of the case.

## PRELIMINARY INJUNCTION

█ It is the Court's opinion that preliminary injunctive relief should be granted in this case as Plaintiff has successfully met each of the tests necessary for issuance under the well-known case of Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958).

### *Likelihood of Success*

█ Plaintiff has made a strong showing here that it is likely to prevail on the merits in light of West Virginia state law, as incorporated by the National Bank Act, which prohibits branch banking. Furthermore, while the Comptroller has great discretion in the area of charter authorizations, as was stated in both Commercial State Bank of Roseville v. Gidney, D.C., 174 F.Supp. 770, 788, affirmed per curiam, 108 U.S.App. D.C. 37, 278 F.2d 871 (1960), and Whitney National Bank in Jefferson Parish v. Bank of New Orleans, 116 U.S.App. D.C. 285, 295, 323 F.2d 290, 300 (1963), reversed on other grounds, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1954), " * * * there is no discretion to unlawfully issue a certificate." At this stage, the Court has held the Comptroller's preliminary authorization to have been unlawfully made, hence void, and the onus is now on the Comptroller to come forward with findings to support his conclusions. Until these findings are made a part of this record and the Court has had a chance to review them in accordance with the applicable law, no authorization may take final effect.

*Irreparable Injury*

Economic injury to Plaintiff bank is certain to occur should any bank ever open its doors to the merchants and employees of the Mall. However, the irreparable injury that is vital here is the loss of public confidence in the banking system, and the confusion and inconvenience to the public if the proposed facility is allowed to open and subsequently be forced to close its doors should plaintiff ultimately prevail on the merits. The Comptroller himself has previously cited these very reasons in arguing against the closure of a branch bank in his Memorandum in Support of Motions to Dismiss and for Summary Judgment in Alaska State Bank v. Camp, No. A–101–70 (D.Alaska, Jan. 22, 1971) at 38.

### Harm to Other Interested Parties and the Public Interest

As is the case with Plaintiff bank, certain economic injury will befall Defendant-Intervenor bank if it is not allowed to open at this time. However, as stated before, mere economic injury is not going to prevail over the public interest.

Moreover, the above-discussed issues relevant to issuance of a preliminary injunction are strikingly similar to those addressed by our Court of Appeals in First National Bank of Fairbanks v. Camp, *supra*, 465 F.2d 586 (decided June 7, 1972). In that case the District Court denied injunctive relief on May 17, 1971. On May 19, the Court of Appeals without opinion issued a stay pending final determination on the merits. On May 27, the Court denied a motion to vacate the stay and on June 30, the Court en banc denied a motion for reconsideration of its orders of May 19 and 27. Likewise, in the interest of justice in the case at bar, equity demands that the *status quo* be kept pending final determination on the merits by this Court.

In light of the foregoing, the Court finds that the Comptroller of the Currency's preliminary charter approval of Union Central National Bank's proposed facility being issued without the required findings of fact in support of his conclusions, was issued unlawfully and is, hence, void and without legal effect.

It is, therefore, by this Court on this 3rd day of October, 1972,

Ordered that this case be, and hereby is, remanded to the Comptroller of the Currency for the purpose of making findings of fact and conclusions of law in accordance with this Opinion and sufficient for the Court to grant Plaintiff the judicial review to which it is entitled; and it is

Further ordered that Defendant Comptroller be, and hereby is, enjoined from making any final approval on the application at issue here pending final determination on the merits or until further order of this Court; and it is

Further ordered that the above-mentioned findings and conclusions are to be made a part of this record by the close of business on the 30th day of October, 1972 so that resolution of the issues involved here may be expedited. The Court hereby retains jurisdiction over this action until it has made a final decision on the merits.

## MEMORANDUM OF THE COURT DENYING THE MOTION OF INTERVENOR FOR A STAY OF THE INJUNCTION PORTION OF THE ORDER ENTERED BY THIS COURT ON OCTOBER 3, 1972 PENDING APPEAL

### I. *Introduction*

On October 3, 1972, the Court issued an order preliminarily enjoining the Comptroller of the Currency ("Defendant") from granting a charter authorizing the establishment of a proposed new bank in Parkersburg, West Virginia. In addition, the Court remanded the entire matter to Defendant with instructions that he submit findings and conclusions reflecting the bases for his decision to issue a charter.

In issuing the foregoing order, the Court specifically found that:

1. Plaintiff has made a strong showing that it is likely to prevail on the merits of its complaint;

2. Defendant's action preliminarily authorizing the establishment of the proposed bank was void because it was not supported by findings and conclusions as required by procedural due process and for other reasons set forth in this Court's Opinion of October 3, 1972;

3. Plaintiff would suffer economic injury if the proposed bank is permitted to open during the pendency of this proceeding;

4. The sponsors of the proposed bank ("Intervenor") may suffer some economic injury if the bank is not permitted to open at this time, however, mere economic injury does not take precedence over the public interest;

5. The public would be irreparably harmed through confusion and inconvenience if the proposed bank opens and later is forced to close; and

6. Equity demands that the *status quo* be kept pending final action on the merits.

On October 4, 1972, Intervenor filed a motion seeking a stay of the injunctive portion of the Court's October 3, order pending appeal.

 The Court denies the application for a stay pending appeal upon the following grounds:

1. The motion is founded on factual contentions which are directly antithetical to this Court's articulated findings.

2. The motion assumes that final administrative action approving the proposed bank has been taken, whereas this Court expressly held to the contrary that the action required to be taken at the administrative level was never completed. Accordingly, there is no basis upon which Defendant may issue a charter authorizing Intervenor to commence operations.

3. If the injunctive portion of the Court's order is stayed, Defendant's findings and conclusions are likely to be merely a statement of support for an operating bank. This, of course, would frustrate the purpose of the Court's remand.

II. *Intervenor's Motion is Founded on Contentions Which Are Directly Antithetical to the Court's Articulated Findings*

The grounds stated in support of the pending motion are precisely those which Intervenor raised in its opposition to Plaintiff's motion for preliminary injunction. The Court addressed and specifically rejected each of these grounds and issued antithetical findings on each point. Since Intervenor has made no effort to demonstrate the invalidity of these findings, its motion is without basis and should be denied.

III. *Intervenor's Motion Assumes That Final Administrative Action Approving the Proposed Bank Has Been Taken, Whereas This Court Expressly Held to the Contrary That the Action Required at the Administrative Level Was Never Completed*

The basic assumption underlying Intervenor's motion is that final administrative action approving the proposed bank has been taken and that all that remains is judicial review. This assumption does not comport with the language of this Court's Opinion, an excerpt from which is set forth below:

"At this stage, the Court has held the Comptroller's preliminary authorization to have been unlawfully made, hence void, and the onus is now on the Comptroller to come forward with findings to support his conclusions. Until these findings are made a part of this record and the Court has had a chance to review them in accordance with the applicable law, no authorization may take final effect." (p. 1328)

The quotation indicates that there has been no final action at the administrative level on Intervenor's application for

a charter. Until the administrative decision-making process has been completed, there is no basis upon which Defendant can issue a charter authorizing Intervenor to commence operations. Presumably no Court at this point could authorize the establishment of the proposed bank absent final administrative action.

IV. *If the Injunctive Portion of the Court's Order is Stayed, Defendant's Findings and Conclusions Are Likely to b'e Nothing More Than a Statement of Support For an Operating Bank*

Defendant has often said and the Court has recognized that the closing of an operating bank would cause great and irreparable harm to the public in the form of confusion and inconvenience and loss of confidence in the banking system. However, it must be noted that the Comptroller's action herein, without findings, does more potential harm to the public and the dual banking system of this country than permitting one to open under a cloud of suspicion which the circumstances of this case raises. Accordingly, if the proposed bank were permitted to operate during the remand period, Defendant, who is charged with maintaining a healthy banking system, would scarcely be in a position to render a full and honest exposition of the manner in which he reached his decision to grant a charter. The granting of Intervenor's motion would thus frustrate the purpose of the remand and that of the public's right to know the real basis of the Comptroller's decision.

Plaintiff believes that the preparation of findings and conclusions is an integral part of the administrative decision-making process. It should not simply be an exercise in perfunctorily supporting a decision which has already been made. Rather, the systematic preparation of findings should be the basis upon which a decision is reached. If Defendant issues a charter before this step has been taken, one of the salutary effects of findings will be lost.