Board of Trust Company Incorporation
No. 6597

HAMPTON NATIONAL BANK

v.

STATE OF NEW HAMPSHIRE & a.

January 31, 1974

*Sulloway, Hollis, Godfrey & Soden* and *John C. Ransmeier* (*Mr. Ransmeier* orally) for the plaintiff.

*Warren B. Rudman,* attorney general, and *Edward A. Haffer,* attorney (*Mr. Haffer* orally), for the State and the Board of Trust Company Incorporation.

*Sanders, McDermott & Kearns, Maynard, Dunn & Phillips* and *Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally) for Seabrook Bank and Trust Company.

LAMPRON, J. Appeal by the plaintiff under RSA 541:6 from the denial on January 5, 1973, by the board of trust company incorporation of its motion that the board reconsider its decision of December 14, 1972, granting a state charter under RSA ch. 392 to a new trust company to be established in Seabrook under the name of Seabrook Bank and Trust Company.

Plaintiff's grounds of appeal, and the issues to be decided by this court, are: (1) Whether the board could reasonably find on the evidence that the public convenience and advantage would be promoted by the establishment of this company; (2) whether the board erred when it failed to consider the character, reputation, and competency of proposed bank personnel in arriving at its decision; (3) whether the board erred in failing to support its decision by a record disclosing the findings upon which it rests and the reasons therefor.

RSA 392:5 (Supp. 1972) provides that on the filing of a petition to form a trust company the board is to decide "whether the public convenience and advantage will be promoted by the establishment of such corporation ... Upon receipt of said petition the bank commissioner shall cause to be made a complete and exhaustive field investigation based upon a thorough analysis of the factors on which a decision of approval or denial is based." "In deciding the question, the board shall include in its consideration: I. The adequacy of the proposed trust company's capital structure. II. The earning prospects of the proposed trust company. III. The convenience and needs of the community to be served by the proposed trust company. IV. The character and general standing in the community of subscribers, the prospective directors, proposed officers and other employees, and other persons connected with the petition or to be con-

nected with the proposed trust company. V. The banking ability and experience of proposed officers and other employees. Upon reaching its decision on the question, the board shall make a record thereof . . . ." RSA 392:8 (Supp. 1972).

The required field investigation on the petition of the proposed Seabrook Bank and Trust Company was made and a report filed with the bank commissioner on July 14, 1972. The board, consisting of the commissioner, the State treasurer and the attorney general, held a public hearing on the petition of September 27, 1972. A transcribed record thereof consisting of the testimony of those in favor and those opposed to the petition is before this court together with letters, petitions and other documents presented to the board including the report of the field investigation and survey made by a bank examiner.

On December 14, 1972, the board unanimously voted to grant the petition to organize the proposed Seabrook Bank and Trust Company. In deciding that this bank would promote the public convenience and advantage (RSA 392:5 (Supp. 1972)), the board made the following written findings: "(1) the capital structure is minimal but adequate; (2) the earning prospects of the prospective bank are at the outset marginal but adequate in view of the growth of the community; (3) a preponderance of the evidence before and after the hearing indicated that a new banking facility would serve the needs of the community; (4) they are satisfied with the general character and standing of the subscribers and prospective directors and officers, although at the time of this decision did not know the names of the employees of the proposed bank; (5) they are satisfied based upon testimony that the incorporators will secure the services of experienced officers and employees. The board is also mindful of the fact that the Federal Deposit Insurance Corporation reviews the officers and employees of the proposed bank . . . ."

On this appeal all findings of the board upon all questions of fact properly before it are to be considered prima facie lawful and reasonable. RSA 541:13. To prevail the plaintiff must show that the order and decision of the board is clearly unreasonable or unlawful. *First Fed. Savings &c. Ass'n v. State*

*Board of Trust Co.,* 109 N.H. 467, 468, 254 A.2d 835, 836 (1969). The record contains the following evidence. The capital of $400,000 proposed for the new bank is far in excess of the minimum of $50,000 required by RSA 392:25 for new trust companies in towns the size of Seabrook. Fifty thousand dollars of the total capital was assigned to surplus and $50,000 to undivided profits. Three-year projections of operations for the proposed bank showed expected deposits, earnings, expenses and net profit or loss. Similar projections for four banks chartered in the recent past and their actual operations were presented and could be compared by the board. Seabrook's normal population, its sizeable increase in the summer, its projected growth, economic make-up, the composition of the area to be served by the proposed bank and the existing banking services were in evidence. There was testimony on the background and business experience of the subscribing associates and prospective directors and particularly the banking experience of some of them.

The plaintiff, and other banks opposing the application, presented evidence that the figures used in the projections of operations were unreliable and based in part on unrealistic expense estimates. Both sides presented expert evidence to support their respective position. It is well established in this jurisdiction that the board can exercise reasonable discretion in accepting or rejecting expert opinions as well as in deciding what weight to give them. *New England Tel. & Tel. Co. v. State,* 113 N.H. 92, 102, 302 A.2d 814, 821 (1973). Furthermore the board, and particularly the bank commissioner, is possessed of expertise in the field of banking which it could properly use in arriving at its conclusions. Furthermore the board had a "complete and exhaustive field investigation based upon a thorough analysis of the factors on which a decision of approval or denial is based" made by a bank examiner on the staff of the banking department. RSA 392:5 (Supp. 1972); *see Granite State Alarm, Inc. v. New England Tel. & Tel.,* 111 N.H. 235, 238, 279 A.2d 595, 598 (1971). We hold that on the testimony presented at the public hearing, the field investigation report, the other exhibits, and its own expertise, the board could properly find that the capital of the proposed bank and its earnings prospects were adequate,

that it would serve the needs of the community, and that the general character and standing of its subscribers and prospective officers were satisfactory.

The plaintiff maintains, however, that the decision of the board must be set aside since it failed to consider the character and reputation of all eventual stockholders and key personnel as well as the competency of the latter as required by RSA 392:8 IV, V. The board passed on the character and reputation of the subscribing stockholders. It also stated in its written decision that although at the time it did not know the names of the employees of the proposed bank it was satisfied based upon testimony that the incorporators would secure the services of experienced officers and employees. The board also adverted to the fact that the Federal Deposit Insurance Corporation reviews the officers and employees of the proposed bank.

The requirements of RSA 392:8 must be given a reasonable interpretation and meaning. *General Electric Co. v. Dole,* 105 N.H. 477, 479-80, 202 A.2d 486, 488 (1964); *Boulia-Gorrell Lumber Co. v. Company,* 84 N.H. 174, 148 A. 28 (1929). If the legislature had intended the board to pass on the character and reputation of not only the associates, who were then known to it, but also on the character and reputation of unknown future stockholders it would have used words such as "a complete list of stockholders" as it did in RSA 392:22. A similar practical and workable interpretation must be given to the requirements of RSA 392:8 IV, V with regard to consideration by the board of the banking ability "of proposed officers and other employees". At the preliminary stage of incorporation when a charter is sought, the identity of the prospective personnel of a new bank, who presumably will be drawn from existing institutions precisely because of their experience in the trade, will not likely be known. The statute should not be read as providing an unworkable and impractical requirement which would render stillborn a proposed charter because prospective employees fearful of jeopardizing their present employment will not commit themselves openly to an uncertain venture. We cannot accept plaintiff's contention that the legislature intended that the board at the charter stage must pass on the

character of future unknown stockholders and the banking ability of unknown officers and personnel of a bank not yet at a stage to begin operations. *General Electric Co. v. Dole supra; Coletta v. State,* 106 R.I. 764, 236 A.2d 681 (1970).

This interpretation does not mean that the legislature has failed to recognize the need of experienced and competent personnel to conduct the business of the proposed bank. RSA 392:23 provides that the bank commissioner is to issue a certificate authorizing the corporation to transact business when he is satisfied that all requirements of law have been complied with. This would include "a complete and exhaustive field investigation" of the character and general standing in the community as well as the banking ability and experience of the officers and other employees of the bank. RSA 392:5, 7 (Supp. 1972). The advertence by the board in its written findings to the fact that such an investigation is made by the Federal Deposit Insurance Corporation does not indicate a surrender of its statutory duties or of those of the bank commissioner but is merely a recognition of a common practice in the banking industry. *In re City Savings Bank of Berlin,* 113 N.H. 378, 309 A.2d 31 (1973). We note that Seabrook Bank and Trust has stipulated it will not begin its operations until the commissioner is satisfied with the personnel and F.D.I.C. protection has been secured. We hold that the action of the board in regard to the character and standing of future stockholders and the banking ability of future officers and personnel was not unreasonable or unlawful. *First Fed. Savings &c. Ass'n v. State Board of Trust Co.,* 109 N.H. 467, 254 A.2d 835 (1969).

The final contention of the plaintiff Hampton National Bank is that the decision of the board must be set aside because it is not supported by an adequate record disclosing the findings of fact made and the reasons underlying the board's decision. As stated in its brief, plaintiff relies "heavily" on *Wood County Bank v. Camp,* 348 F. Supp. 1321 (D.D.C. 1972). In that case, as pointed out by the reviewing court, the Comptroller of the Currency of the United States "[i]n accordance with ... [his] long standing policy ... issued ... no findings of facts or conclusions of law in support of his

decision and merely stated that 'this application has been approved'". *Id.* at 1323. This is in sharp contrast with the five written basic findings made by the board in the present case in support of its ultimate finding that "the public convenience and advantage will be promoted by the establishment" of the Seabrook Bank and Trust Company. K. Davis, Administrative Law Text § 16.04 (3d ed. 1972).

The written findings of the board were that (1) the proposed bank's capital structure is adequate; (2) its earnings prospects are adequate also in view of the prospective growth of the community; (3) the new bank will serve the needs of the community; (4) the character and standing of the subscribers and prospective directors are satisfactory; (5) the services of experienced officers and employees will be secured to operate the bank. Whether or not these findings are supported by the evidence can be verified on appeal by an examination of the transcript of testimony presented at the public hearing, the field investigation, and other exhibits. These have been transferred to this court and examined to verify if the above basic findings which lead to the ultimate conclusion to grant the charter were supported by the record. *See Environmental Defense Fund v. Environmental Protection Agency,* 465 F.2d 528, 537 (D.C. Cir. 1972).

The fact that the findings are couched in the language of the statute (RSA 392:8 (Supp. 1972)) which enumerates the factors to be considered by the board does not affect their character as basic findings. *First Nat'l Bank & Trust Co. v. Ley,* 182 Neb. 164, 153 N.W.2d 743 (1967); *Cumberland Farms v. Pierce,* 104 N.H. 489, 496, 190 A.2d 403, 409 (1963). "Courts do not want agencies to include detailed summaries of testimony in their findings: they want what they call the basic facts". K. Davis, Administrative Law Text § 16.04; at 322 (3d ed. 1972). The basic findings required vary with the nature of the administrative proceeding. When the ultimate conclusion to be reached is the fixing of a rate of return for a utility or of a rate for a medical service corporation specific findings on the various elements which are considered to fix the rate must be made by the agency to permit an adequate appellate review. *N.H.-Vt. Hosp. Serv. v. Durkin,*

113 N.H. 717, 313 A.2d 416 (1973); *New England Tel. &*
*Tel. Co. v. State,* 113 N.H. 92, 95, 302 A.2d 814, 817 (1973);
*Company v. State,* 95 N.H. 353, 359, 64 A.2d 9, 15 (1949).
However in cases like the present, where the ultimate conclu-
sion to be reached is whether public convenience will be pro-
moted by a new bank in a community, the requirements
as to basic findings are less rigid. *See First National Bank &*
*Trust Co. v. Ley, supra* at 166-67, 153 N.W.2d 743, 746; *Cumber-*
*land Farms v. Pierce supra; Aetna Casualty & Co. v. Sullivan,*
83 N.H. 426, 143 A. 687 (1928).

We hold that the written findings made by the board in
this case constituted a sufficient "record" under RSA 392:8
(Supp. 1972) and were adequate in this type of proceeding.
They met the purposes of basic findings, that is, aiding judicial
review, preventing judicial usurpation of administrative func-
tions, and protecting against careless or arbitrary action by
an agency. K. Davis, Administrative Law Text § 16.03 (3d
ed. 1972). They furnished a sufficient basis for this court
to determine on appeal if the evidence supported the conclu-
sions reached by the board that the statutory requirements
for the chartering of a new bank were met.

*Appeal dismissed.*

All concurred.