Board of Trust Company Incorporation
No. 7025

SUGAR RIVER SAVINGS BANK

v.

STATE OF NEW HAMPSHIRE & a.

March 31, 1975

*Hall, Morse, Gallagher & Anderson* and *Robert E. K. Morrill (Mr. Morrill* orally) for the plaintiff.

*Jarlath M. Slattery*, by brief and orally, for Newport Savings Bank.

*Warren B. Rudman*, attorney general, and *John S. Kitchen*, attorney (Mr. Kitchen orally), for the State.

DUNCAN, J. This is an appeal under RSA 541:6 by Sugar River Savings Bank from the denial of its motion for rehearing of a decision by the board of trust company incorporation which denied its application filed under date of March 15, 1974, to establish a branch bank in Bradford. RSA ch. 384-B; *see* RSA 384:1-a (Supp. 1973). The proposed branch was to be located approximately twelve and a half miles southeast of the bank's principal office in Newport, and some eight miles west of its existing branch office in Warner. On April 4, 1974, Newport Savings Bank, which also has its principal office in Newport, and has a branch office in Sunapee, three miles northeast of Newport, likewise filed an application to establish a branch in Bradford. The proposed branch in Bradford would be about twelve and a half miles from both of the Newport Savings' existing offices.

Following submission of the applications, the bank commissioner instituted an investigation into the financial history and current resources of both banks and into the economic feasibility of branch banking in Bradford. The report of the bank examiner acknowledged the soundness of each bank, but emphasized the trade area's small population base (2,000) and the proximity of existing banks already serving the area. The examiner recommended denial of both applications because of "inadequate prospects of profitability" and because further expansion would tend to disrupt "the competitive balance now existing" between the two banks.

Notwithstanding these recommendations, on August 4, 1974, the board voted to approve Newport Savings' application and to deny that of Sugar River. Noting that Sugar River's existing branch was in an adjoining town, the board concluded that by granting a Bradford branch to Newport Savings it would enhance the competition with Sugar River. Sugar River's appeal takes the position that the decision was contrary to the facts, premised on an improper and illegal conclusion, and rendered without affording the opportunity for hearing.

RSA 384-B:2 IV provides that in deciding upon applications to establish a branch bank the board shall consider "(a) the convenience, needs and welfare of the communities and the area concerned; (b) the financial history and condition of the... banks concerned including the adequacy of... their capital funds; (c) ... their prospects; (d) the character of the management; and (e) whether or not the effect... would be to expand... [the applicant] beyond limits consistent with adequate and sound banking, the public interest and the preservation of competition in the field of banking." The board found that the proposed Newport Savings branch would meet these requirements. Sugar River contends that in determining and weighing the facts and applying the legislative guidelines, the board acted unlawfully and unreasonably. It nevertheless recognizes that its burden of proof is substantial. RSA 541:13; *Hampton Nat'l Bank v. State,* 114 N.H. 38, 40, 314 A.2d 668, 671 (1974); *First Fed. Savings &c. Ass'n v. State Board of Trust Co.,* 109 N.H. 467, 468, 254 A.2d 835, 836 (1969).

In support of its appeal, Sugar River maintains that since the bank examiner had found the financial history and condition of both banks to be satisfactory, the board should have considered the sequence in which the applications were filed. However RSA 384-B:2 IV, which is mandatory rather than exemplary, does not require consideration of factors not specified. The interjection of a fortuitous "race" factor into the legislature's clearly defined scheme of determination would be inappropriate, especially since the length and depth of Newport's application indicates that its preparation was probably commenced well in advance of Sugar River's filing and that it was not merely a hasty last minute response. Under the circumstances, it was not unreasonable for the board to disregard the fact of the prior filing by Sugar River.

Sugar River further claims that since the creation of a branch in Bradford is a significantly uncertain venture, it was incumbent upon the board to select the bank with the capital structure most likely to withstand potential economic perils. Because Sugar River has a larger capital structure than Newport Savings, it argues that the board acted unreasonably in denying its application. The bank examiner found that in neither bank did the "adequacy of capital funds" pose an immediate problem. Where both capital structures were inherently stable, a balance in favor of Sugar River served to underscore the board's rationale that

competition would be preserved and public service promoted by the introduction of a Newport Savings branch into a trade area overlapping that of the Sugar River Warner branch.

It cannot be assumed that the board failed to consider "the financial history and condition of the . . . banks concerned" (RSA 384-B:2 IV (b)). Both applications as well as the examiner's report, were replete with statistical data. Although the board's findings were not detailed, they were adequate since the complete record is available for review. *Hampton Nat'l Bank v. State*, 114 N.H. 38, 44-45, 314 A.2d 668, 673-74 (1974). The board could find that the establishment of a Newport Savings branch in Bradford would not cause irreparable damage to the Sugar River Warner branch but rather would result in stabilization of competitive balance. The board's decision cannot be held to have been either arbitrary or unreasonable.

Sugar River lastly claims that RSA 384-B:2 III (Supp. 1973), and justice and fair play dictate that the board should not have denied its application without a hearing. As originally enacted (Laws 1963, ch. 188), RSA 384-B:2 III mandated a public hearing on every application, but that requirement was substantially altered by Laws 1973, 504:6. As amended, the statute in effect at the time of both filings in this case made hearings discretionary with the board: "Said board may, upon request of any interested person or corporation, or at its own discretion, order a public hearing, or may approve said application without a hearing." RSA 384-B:2 III (Supp. 1973). Reading the statute literally, Sugar River sees it as eliminating the requirement of a hearing only when an application is approved, and contends that an application may not be denied without a hearing. We cannot find that the legislature so intended. *See Peterborough Savings Bank v. King*, 103 N.H. 206, 209, 168 A.2d 116, 118 (1961). In this case, the issue of the necessity for a hearing was not presented since no request for one was made. Since it was apparent from the record that both applications should not be granted, once the application of Newport Savings was granted, the Sugar River application was necessarily denied.

Although some courts have recommended formal hearings in order to provide a more complete record for review (*Zions First Nat'l Bank v. Taylor*, 15 Utah 2d 239, 241, 390 P.2d 854, 855 (1964)), most recognize that the establishment of bank branches is a legislative determination not requiring a formal adversary hearing. *Blairsville Nat'l Bank v. Myers*, 409 Pa. 526, 533-34, 187

A.2d 655, 659 (1963); *Green v. Wilmington Sav. Fund Soc'y,* 310 A.2d 638, 640 (Del. 1973); *Camp v. Pitts,* 411 U.S. 138, 139 (1973). Nor is such a hearing necessarily beneficial. "A trial is surely a clumsy means of determining how many banks and which banks ought to serve a community.... Written presentations of economic data, coupled with conferences, seem... preferable to trials, except on issues of specific fact." Davis, *Administrative Procedure in the Regulation of Banking,* 31 Law & Contemp. Prob. 713, 715 (1966). If the request of a potentially aggrieved party for a hearing is denied, he may appeal the board's discretionary action.

Since the findings and rationale of the board conformed to the statutory guidelines and could reasonably be made, the orders must stand. *Hampton Nat'l Bank v. State,* 114 N.H. 38, 314 A.2d 668 (1974).

*Appeal dismissed.*

All concurred.