WIGGINTON, Judge.
This appeal, brought pursuant to' the applicable provision of the Insurance Code of Florida,[1] is from an order of the Insurance Commissioner denying appellants’ application for an increase in private passenger automobile liability insurance rates. In their points on appeal appellants contend that by his order of denial the Commissioner erroneously concluded that the rates proposed by appellants are excessive and unfairly discriminatory; ignored the statutory standards to be applied in considering an application for an insurance rate increase, and based his conclusion on findings not supported by the preponderance of the evidence.
The rate filing submitted by appellants for the Commissioner’s approval proposed' only a change in rates based upon loss experience, and did not propose any change in-the expense ratio or use classes, the latter having been previously approved by the Commissioner pursuant to a previous filing. The testimony and exhibits submitted at the-hearing affirmatively established' a substantial underwriting loss by appellants for *28 bodily injury and property damage lines during the years 1962, 1963, and 1964. In order to obviate such losses in the future, appellants’ filing reflects a need for a rate increase of approximately fourteen per cent of the premium presently charged for this type coverage.
The basis of the rate filing by appellants is the “Pure Premium,” which is the average dollar loss per automobile per earned car year. In arriving at the total amount of its requested rate increase, appellants added to the “Pure Premium” a “Development Factor” and an “Unallocated Loss Adjustment Factor.” The development factor consists of the estimated amount of future payments expected to be made on past claims received but not settled within the given experience period. The loss adjustment factor is the estimated amount of expenses to be incurred in the future handling and adjustment of claims made but not settled during the given experience period. The total rate increase is arrived at by multiplying the Pure Premium by the development factor, thus producing an adjusted Pure Premium. The adjusted Pure Premium is in turn multiplied by the loss adjustment factor thereby producing a dollar amount representing the adjusted Pure Premium, including the anticipated loss and loss adjustment expenses. The percentage of rate increase necessary to produce the adjusted Pure Premium calculated in the manner above described represents a statewide average rate, which must be adjusted among the various geographical territories of the state in accordance with each territory’s experience. By the application of an accepted formula to the statewide rate, an indicated average territorial rate applicable in each of the territories of the state is established. The necessity for adjusting the statewide rate in the various territories is to insure that excessive premiums will not be charged policyholders in a territory having a favorable loss experience for the purpose of offsetting the excessive losses in territories having an unfavorable loss experience. Whether the indicated average territorial rate is fair and free from discrimination is determined by the use of what is known as a “Credibility Table.” In making this determination, most companies and rate-making organizations utilize what is known as the Standard Credibility Table. This table uses as a measure only the number of claims for losses made within each of the territories of the state. In making their computation in the filing under consideration, appellants did not use the standard credibility table, but used a table they developed which utilizes as its basic measure the number of claims made within the territories, modified by the number of earned exposures.
From the rate filing made by appellants, and the supporting evidence submitted by them at the hearing, the Commissioner concluded that the development factor and unallocated loss adjustment factor utilized by appellants in calculating the amount of requested rate increase lacked validity. With respect to the credibility table utilized by appellants in determining the adjustment and distribution of the statewide rate between the various territories of the state, the Commissioner found:
“The company’s credibility table develops credibilities which are measured not only by the number of claims, as in the standard credibility table, but also by the number of insured cars in the territory (earned cars). The table, however, develops S'% lower credibility for the largest single territory in this state (01),. by number of cars and number of claims, than that which the territory would have under the standard credibility table. Although the theory behind the company’s credibility table is reasonable, its application in this particular case seems inequitable in that, in effect, it penalizes the largest individual territory in the state compared to the- standard table.”
Appellants strenuously contend that the actuarial standards used by them in arriving at the development factor and un *29 allocated loss adjustment factor are sound and in accord with accepted underwriting principles. They further contend that the credibility table developed by them produces a more just result than the standard credibility table customarily used by others for this purpose. If the Commissioner, upon his analysis of the formulas and methods used and the statistical data employed by appellants, had reached a conclusion in harmony with that urged by appellants, we readily concede that an order approving the filing would no doubt be affirmed. The fact is, however, the Commissioner disagreed with the contentions made by appellants and reached the conclusion that the proposed rate increase sought by their filing was excessive and unfairly discriminatory. In his order of denial the Commissioner found the procedures followed by appellants in utilizing the credibility table developed by them produced an inequitable result in the largest single territory in this state as compared to the result which would be reached by use of the standard credibility table usually employed in making calculations of this kind. In summary, the Commissioner concluded that the method by which the credibility table is employed by appellants in their filing produces the result that when the indicated territorial rate is less than the present average rate, less credibility is given to the decrease than would be given if the standard credibility table was used. He further concluded that conversely, where the indicated rate is higher than the present rate, more credibility is given by . appellants’ table than would be the case if the standard credibility table were used. Both results, if true, create inequities and produce rates which are unfairly discriminatory in character.
The rating provisions of the insurance code provide that their purpose is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory.[2]
The statute further provides that in the formulation of rates by insurance companies and rate-making organizations, the following factors may be utilized:
“(a) The experience or judgment of the insurer or rating organization making the filing;
“(b) Its interpretation of any statistical data it relies upon ;
“(c) The experience of other insurers or rating organizations; or
“(d) Any other factors which the insurer or rating organization deems relevant.” [3]
 From the foregoing it is apparent that underwriting judgment based upon reliable experience data is the overriding factor in formulating an acceptable insurance rate. It seems obvious that the same standard of judgment is required of the Insurance Commissioner in the discharge of his statutory duty to approve or deny a rate filing made by an insurer or rating organization. The formulation of insurance rates involves an expertise not possessed by this court. Having been elected by the people of this state, it must be assumed that the Insurance Commissioner, aided by the experts on his staff, possesses a credible competence in the field of rate making. An order rendered by the Commissioner approving or denying a rate filing reaches this court with a presumption of correctness. Such order will be disturbed on appeal only upon a clear showing that it is erroneous as a matter of law, or is not supported on the record by competent and substantial evidence, or is so arbitrary and capricious as to constitute an abuse of discretion.
We find the case sub judice to be similar in many material respects with the case of Massachusetts Bond. & Ins. Co. v. Com *30 missioner of Ins.[4] We agree with the ruling of the court in that case, which holds:
“ * * * The evidence, oral and documentary, introduced by the petitioners is impressive and tends strongly to support their estimate of the probable conditions of 1952. It was not challenged by the commissioner or contradicted by any evidence introduced by him. If the commissioner had fixed the rates on the basis of the 1950 loss data it would be difficult to say that he was wrong. But the question is not what this court would decide if it were in' the position of the commissioner. It ‘is elementary that the fixing of rates is not a proper judicial function.’ New England Telephone & Telegraph Co. v. Department of Public Utilities, 327 Mass. 81, 85, 97 N.E.2d 509, 512; American Employers’ Ins. Co. v. Commissioner of Insurance, 298 Mass. 161, 169, 10 N.E.2d 76. This court ‘does not sit as a board of review to substitute its judgment for that of the Legislature or of the commission lawfully constituted by it, as to matters within the province of either.’ Boston & Albany Railroad v. New York Central Railroad Co., 256 Mass. 600, 618-619, 153 N.E. 19, 25. As stated above, our inquiry here is whether the order of the commissioner was without reasonable support in the evidence. We cannot say that it was. Even though the loss estimates as adjusted by the development factors may be very reliable, their projection into the future is to some extent a matter of prophecy. By his projection of the average experience of 1948, 1949, and 1950 it is obvious that the commissioner gave some weight to the upward trend in losses discernible in 1949 and 1950. That he did not go farther and base his estimate solely on the 1950 data cannot be said to be unwarranted.”
From our review of the record, and after carefully considering the contentions advanced by appellants, we cannot say that the judgment exercised by the Commissioner in this case and the conclusions reached by him on the record are either erroneous as a matter of law, find no support in the evidence, or constitute an abuse of discretion. The order appealed is accordingly affirmed.
RAWLS, C. J., and CARROLL, DONALD K., J., concur.

. F.S. § 027.391, F.S.A.

. BIS. § 627.031, V.S.A.

. F.S. § 627.091, F.S.A.

. Massachusetts Bond. & Ins. Co, v. Commissioner of Ins., 329 Mass. 265, 107 N.E.2d 807, 814.