Insurance Commissioner
No. 7694

### Insurance Services Office

v.

### Frank E. Whaland,
### New Hampshire Insurance Commissioner

September 30, 1977

*Orr & Reno,* of Concord, and *Ronald L. Snow* (*Mr. Snow* orally), for the plaintiff.

*David H. Souter,* attorney general, and *Andrew R. Grainger,* attorney (*Mr. Grainger* orally), for the state.

GRIMES, J. This case is an appeal pursuant to N.H. RSA 541:7, taken by Insurance Services Office, an insurance rating organization as defined in RSA ch. 413, from a final decision of the New Hampshire Insurance Commissioner. The commissioner denied plaintiff's requested revision of its New Hampshire Homeowners Insurance Program originally filed with the commissioner for approval on April 15, 1976. The plaintiff, on behalf of the companies for whom it was filing the requested rate relief, was proposing to increase New Hampshire Homeowners Insurance premiums an average of 14.4 percent.

Plaintiff originally filed with the commissioner an overall premium rate increase of 15.8 percent on April 15, 1976. On June 16, 1976, a hearing was held at which time plaintiff's expert, Mr. Fusco, gave testimony regarding the filing. Philip Presley, the department's actuary at the time, was unable to testify due to illness, and the commissioner decided to continue the hearing until August 3, 1976, so that Mr. Presley could testify.

On August 2, the commissioner determined that he had enough evidence to make a ruling and cancelled the August 3 hearing. Plaintiff objected to this cancellation and requested a rehearing for the purpose of introducing Mr. Presley's testimony. At this time plaintiff also amended its request downward from a 15.8 percent overall premium increase to one of 14.4 percent, allegedly in the hope that the commissioner would more readily approve the

filing and because plaintiff was aware that Mr. Presley would not give testimony to support an increase of 15.8 percent. The commissioner took the position, over plaintiff's objection, that this constituted a new filing and required the submission of a new set of statistics before he would hold another hearing. Plaintiff's position was that the statistics already submitted supported a rate increase of 15.8 percent and would, therefore, also support a 14.4 percent increase. Nevertheless, the new statistics were submitted.

In the meantime, plaintiff took the deposition of Philip Presley pursuant to subpoena on September 30, 1976. The commissioner was not represented despite having received notice both in writing pursuant to the statute, and orally. This deposition, together with all exhibits marked, was submitted to the commissioner on October 29 with a request that he now close this case and render an opinion on the requested rate relief.

Instead, the commissioner ordered a new hearing for December 13, 1976. This hearing, however, produced no testimony but was essentially a forum for both sides to restate their legal positions regarding the "new" filing. The commissioner then indicated that he wanted to summon Mr. Presley for the purpose of taking his testimony and on December 20, 1976, Mr. Presley appeared before the commissioner. The commissioner thereafter denied the requested rate relief. Plaintiff requested a rehearing which was granted. At the rehearing plaintiff stated it had nothing further to introduce and the hearing was closed. The commissioner thereafter again denied the rate relief requested.

■■ Plaintiff agrees that, upon review, an order of the commissioner will be overturned only where plaintiff shows by a clear preponderance of the evidence that the decision of the commissioner is unreasonable or unlawful. RSA 541:13. There is a presumption that the commissioner's decision is prima facie lawful and reasonable. RSA 541:13; *N.H.-Vt. Hosp. Serv. v. Whaland,* 114 N.H. 92, 96, 315 A.2d 191, 194 (1974). It is plaintiff's primary contention that the decision of the commissioner was unreasonable and unlawful because it was unsupported by substantial evidence on the record and because it did not clearly reveal the basis of his determinations. *Id.* at 97, 315 A.2d at 194; *N.H.-Vt. Physician Serv. v. Durkin,* 113 N.H. 717, 724, 313 A.2d 416, 421 (1973); *see* RSA 400-A:14 I, :23 II (a) (Supp. 1975).

In order to determine whether the commissioner made his decision based on substantial evidence, it is necessary to review the

statutory standards to be applied to rate-making and the duties of the commissioner in approving or disapproving rates. According to RSA 414:3(a) rates are not to be excessive, inadequate or unfairly discriminatory. In determining whether rates meet the standard of RSA 414:3(a), due consideration is to be given the following factors set forth in RSA 414:3(b) (Supp. 1975):

1. Past and prospective experience within and without the state.

2. Conflagration and catastrophe hazards, if any.

3. A reasonable margin for underwriting profit and contingencies, to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members or subscribers.

4. To past and prospective expenses both countrywide and those specially applicable to this state.

5. In the case of fire insurance, to the experience of the business for the most recent 5-year period available.

6. All other relevant factors within and outside this state.

The commissioner has the option of approving a requested rate filing or disallowing because it does not comply with the requirements of RSA ch. 414. RSA 414:5(a). That statute further requires the commissioner to send a written notice apprising the organization that made the filing of the respects in which the filing fails to meet the requirements of RSA ch. 414 if the filing is disapproved.

 At the outset we note that rate-making is a technical and highly complex process requiring much expertise. *Pa. Ins. Dept. v. City of Philadelphia*, 196 Pa. Super. Ct. 221, 237, 173 A.2d 811, 819 (1961); *Md. Fire U.W. v. Ins. Comm'r*, 260 Md. 258, 266, 272 A.2d 24, 28 (1971). It demands the review of a complicated set of data, the purpose of which is to determine the amount of premiums necessary to cover losses and expenses to be experienced in the future in addition to producing a reasonable profit. This requires the prediction of future trends extrapolated from past experience. In order to be a predictor of the future, the past experience must be adjusted by certain factors or ratios which take into account things such as future labor costs, future construction costs, future premium buying habits of the public, inflation, etc. *See In re Filing By Fire Ins. Rating Bureau*, 275 N.C. 15, 32, 165

S.E.2d 207, 220 (1969). Thus, rate-making is a judgmental field and as such proper rates cannot be determined with exactitude. *Id.; Fire Insurance Rating Bureau v. Rogan,* 4 Wis. 2d 558, 563, 91 N.W.2d 372, 377 (1958).

██ Rate-making is not a judicial function. 1 R. Anderson, Couch on Insurance § 21:38 (2d ed. 1959). Due to its complexity, as well as to the determination of the legislature, rate-making is left to the discretion of the insurance commissioner who is a specialist in the field and upon whose expertise we must rely. *Travelers Indemnity Co. v. Williams,* 190 So. 2d 27, 29 (Fla. Dist. Ct. App. 1966); *Md. Fire U.W. v. Ins. Comm'r,* 260 Md. 258, 266, 272 A.2d 24, 28 (1971). Due to the expertise required in the field, courts should be reluctant to substitute their judgment for that of the commissioner. *See id.*

The evidence presented in this case is further complicated beyond that of the ordinary rate case by the fact that in 1975 the insurers changed from their old lettered series program to a numbered series. This transition changed coverage in various of the programs offered, such as the ceilings of losses that would be covered and deductibles. Therefore it was necessary for plaintiff to devise a method of conversion for transposing its experiences in the lettered program to experience in the numbered program in order to develop sufficient data history to support the requested rate increase. The plaintiff attempted to do this, and data history, as well as an explanation of the method of conversion, was submitted in the form of a written exhibit, as well as through the testimony of plaintiff's expert.

The commissioner's written decision reveals that his primary reason for denial of the rate increase is plaintiff's use of country-wide indices and statistics in support of its filing, as opposed to data specifically relating to New Hampshire. The commissioner therefore determined that plaintiff's exhibits and expert testimony failed to support its requested rate relief. A further reason for denial was his disagreement with plaintiff's conversion of losses from the lettered to the numbered series.

A review of the record reveals that the only evidence submitted was that of plaintiff which consisted of a number of written exhibits, the testimony of plaintiff's expert and the deposition of Philip Presley. Plaintiff's evidence was supportive of its need for an increase of about 25 percent according to plaintiff's expert. This expert further testified however that due to the fact that

honest people could differ with some of the approaches taken by plaintiff, an increase of only 15.8 percent (later amended to 14.4 percent) was sought. Mr. Presley testified that he disagreed with the use of certain factors by plaintiff, but upon reworking the figures he testified that a 14.2 percent increase was justified in his opinion and that an increase of 14.4 percent was within the accuracy of actuarial methods.

The commissioner, however, through questioning, took issue with the method used by plaintiff to convert losses from the lettered series to the numbered series. It was the commissioner's opinion that past losses in the lettered series were not in fact adjusted to the numbered series. Plaintiff's calculations were based on the assumption that the changes in coverage from one program to the other offset each other equally. The commissioner disagreed with this statement declaring there was an overall retraction in coverage in the numbered series. This led the commissioner to conclude that losses which had occurred under the old series were not refigured for what they would have been had they occurred when the new series was in effect.

Further questioning of plaintiff's expert revealed that countrywide data was used in certain instances where the commissioner desired New Hampshire data because countrywide data did not, in the commissioner's opinion, reflect New Hampshire conditions. This was true for data having to do with building costs and loss adjustment expenses. In addition, with regard to labor costs, plaintiff used statistics for union laborers as opposed to nonunion laborers. The commissioner stated in his decision that the vast majority of repair work was done by nonunion labor in this state and the rate should reflect this fact. The commissioner appended to his decision a table which he stated he obtained from the New Hampshire Department of Employment Security to show the wages of certain nonunion construction laborers from 1970–1975. The table used by plaintiff regarding union laborers in the Manchester area shows a higher wage as well as a more dramatic increase in wages for the period of 1970 to 1975.

RSA 414:3 (b) (Supp. 1975) does not state what weight is to be given the various factors to be considered by the commissioner in determining reasonable rates, and it is within his discretion to determine what weight to give them. *Long v. Nat'l B. of C. Underwriters,* 209 Tenn. 435, 447, 354 S.W.2d 255, 259 (1961). It is also within the discretion of the commissioner to determine

what method is to be used in deriving rates. *In re Filing By Fire Ins. Rating Bureau,* 2 N.C. App. 10, 18, 162 S.E.2d 671, 675 (1968). Therefore the commissioner's determination that New Hampshire data are the more relevant where obtainable in sufficient quantity to be reliable is within his discretion as is his determination that losses were not converted properly from the lettered to the numbered series. As long as the commissioner reached his decision after consideration of the enumerated factors, he acted within his statutory authority in denying the requested relief. *Long v. Nat'l B. of C. Underwriters,* 209 Tenn. 435, 443, 354 S.W.2d 255, 259 (1961); *Pack v. Royal-Globe Insurance Co.,* 224 Tenn. 452, 463, 457 S.W.2d 19, 25 (1970); *Mass. Medical Services v. Commissioner of Insurance,* 346 Mass. 346, 191 N.E.2d 777 (1963).

The burden rests upon the plaintiff as filer to furnish such data as support the filing and satisfy the commissioner that the requirements of RSA ch. 414 have been met. *See* RSA 414:4(d); *Pa. Ins. Dept. v. City of Philadelphia,* 196 Pa. Super. 221, 242, 173 A.2d 811, 821 (1961); *Pack v. Royal-Globe Insurance Co.,* 224 Tenn. 452, 468, 457 S.W.2d 19, 25 (1970); *Mass. Medical Service v. Commissioner of Insurance,* 346 Mass. 346, 191 N.E.2d 777 (1963). Furthermore, there are no investigative duties imposed on the commissioner and as such he is not required to make an investigation "or to gather evidence to confirm or rebut the proposed schedule in making his determination to approve or disapprove." 346 Mass. at 348, 191 N.E.2d at 778. Because the filing failed to supply the commissioner with information which gave proper regard to New Hampshire conditions and which properly converted losses, and because the commissioner's determinations are supported by the record, his decision will not be vacated.

Plaintiff stresses the fact that both experts testified in favor of the increase and that the documentary evidence went unrefuted. The commissioner, however, was free to determine the credibility and weight to be given such testimony. *In re Filing by Fire Ins. Rating Bureau,* 275 N.C. 15, 36, 165 S.E.2d 207, 222 (1969); *White Mountain Power Co. v. Whitaker,* 106 N.H. 436, 439, 213 A.2d 800, 802 (1965); *see* 2 K. Davis, Administrative Law § 14.13 (1958).

Plaintiff further contends that the decision of the commissioner is based upon information not contained within the record. The commissioner appended three documents to his decision in

support thereof. One of the documents was a comparison of coverage between the numbered series and the lettered series. The document revealed where in the commissioner's opinion there had been expansions and retractions of the old lettered series in the new numbered series. This document is merely an appraisal of evidence before the commissioner and as such its inclusion as a separate document to show the thinking of the commissioner does not detract from its acceptability as a finding by him.

■■■ A second appended document was a listing of domestic homeowners insurance companies doing business within the state showing what loss ratio they had experienced in 1975; and a third document, which was allegedly obtained by the commissioner from the New Hampshire Department of Employment Security and showed wages for laborers in New Hampshire's construction industries for 1970 to 1975, was also appended to the decision. Plaintiff contends that the commissioner may not make use of such documents as they were not formally introduced into evidence at the hearing. We reject this contention.

Official notice of facts presents a problem for which no uniform approach is satisfactory. 2 K. Davis, Administrative Law § 15.10 (1958). However, the primary problem with official notice such as that employed by the commissioner is to ensure disclosure to the opposing party and a fair opportunity for the opposing party to be heard if justice so requires. 2 K. Davis, *supra* at 403. In this instance, plaintiff was granted a rehearing and had a full opportunity to rebut any evidence upon which the commissioner relied. Plaintiff's failure to make use of this opportunity will not work to prevent the commissioner from using these documents in his decision-making process.

*Appeal dismissed.*

All concurred.