Commissioner of Insurance
No. 79-127

## APPEAL OF NATIONWIDE INSURANCE COMPANY
### (New Hampshire Commissioner of Insurance)

February 14, 1980

*Devine, Millimet, Stahl & Branch,* of Manchester (*Norman H. Stahl* orally), for the plaintiffs, Nationwide Mutual Insurance Co. and Nationwide Mutual Fire Insurance Co.

*Thomas D. Rath,* attorney general (*Andrew R. Grainger,* assistant attorney general, orally), for the defendant, New Hampshire Insurance Commissioner.

BOIS, J.   This is an appeal from the New Hampshire Insurance Commissioner's denial of an automobile insurance premium rate increase to the plaintiffs. We affirm the commissioner's decision.

Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company (hereinafter Nationwide) petitioned the New Hampshire Insurance Commissioner for a 14% insurance premium rate increase on August 24, 1978, following an increase of 15% granted just three weeks earlier. The commissioner denied the request on September 14, 1978. Nationwide then requested a hearing pursuant to RSA 400-A:17 (Supp. 1977), which was held on November 28, 1978. The commissioner issued a decision on December 29, 1978, again denying the requested increase on grounds that it was excessive and discriminatory. A rehearing was held on March 26, 1979, at Nationwide's request, and the commissioner reaffirmed his decision. Nationwide petitioned this court on June 14, 1979, to schedule an evidentiary hearing pursuant to RSA 490:8 on controverted questions of fact, which we denied on August 17, 1979. Nationwide now appeals the commissioner's decision pursuant to RSA ch. 541.

■ Nationwide first argues that the Insurance Commissioner's denial of its requested rate increase was unlawful because he did not comply with the Administrative Procedure Act (hereinafter APA), RSA ch. 541-A (Supp. 1977) in promulgating a rule that conditions automobile policy rate increases upon adoption by insurers of a flat rate surcharge plan. We acknowledge that the commissioner's adoption of rules and regulations pursuant to RSA 400-A:15 (Supp. 1977) must be in accordance with procedures established in that statute and in the APA, RSA 541-A:3, :4 (Supp. 1977). *See State v. Van Wie,* 118 N.H. 31, 34, 382 A.2d 372, 374 (1978). Compliance with the APA, however, was not required in this case.

■ The Insurance Commissioner is directed by statute to disapprove rate schedules which are excessive, inadequate, unreasonable or unfairly discriminatory. RSA 412:15; RSA 414:3. The

commissioner disapproved Nationwide's requested rate increase on grounds that it was both excessive and discriminatory. The denial was not founded upon the violation of a rule requiring a flat rate surcharge, but rather upon the commissioner's conclusion in the form of a declaratory ruling that the failure to adopt a flat rate surcharge plan in this case was discriminatory and violative of RSA 412:15 and RSA 414:3.

■ The ratemaking authority delegated to the commissioner by RSA 412:15 and RSA 414:3 is independent of the rulemaking authority granted by RSA 400-A:15 (Supp. 1977). *See* RSA 400-A:3 (Supp. 1977). The commissioner's decision did not trigger the procedural requirements of the APA because he did not adopt a "rule" within the meaning of RSA 541-A:1 IV (Supp. 1977). He simply issued a declaratory ruling denying Nationwide's requested rate increase. *See* N.H. Laws 1979, 307:3 ("declaratory rulings" expressly excluded from APA definition of "rule"). However, we caution against the adoption of rules under the guise of issuing declaratory rulings. We would consider a uniform policy that conditions automobile policy rate increases upon adoption by insurers of a flat rate surcharge plan to be a "rule" under RSA 541-A:1 IV (Supp. 1977) (amended by N.H. Laws 1979, 307:3) requiring compliance with the APA. *See generally* Office of Legislative Services, *New Hampshire Rulemaking Manual* (October, 1979).

■ Nationwide next argues that the commissioner erred in implementing the requirements of RSA 412:15 and RSA 414:3 by considering Nationwide's profits outside the State in his decision, and by not giving "due consideration" to several factors such as Nationwide's past and prospective loss experience and its calculations to establish a reasonable margin for underwriting profit and contingencies.

The broad powers conferred upon the commissioner by RSA 400-A:3 (Supp. 1977), RSA 412:15 and RSA 414:3 clearly encompass the authority to consider Nationwide's profits outside the State. Furthermore, the record supports a finding that the commissioner reached his decision after giving "due consideration" to the factors enumerated in RSA 412:15 and RSA 414:3, including Nationwide's past and prospective loss experience, and a reasonable margin for underwriting profit and contingencies.

■ Ratemaking is a technical and highly complex process and has been delegated to the Insurance Commissioner because he is a specialist in the field. *Insurance Serv. Office v. Whaland,* 117 N.H. 712,

717, 378 A.2d 743, 746 (1977). RSA 413:3(b) (Supp. 1977) does not prescribe the weight to be accorded to the various factors considered by the commissioner in ratemaking, and it is within his discretion to determine both the method to be used in deriving rates and the weight to be given to each factor. *Id.* at 718–19, 378 A.2d at 747. Nationwide has not overcome the presumption that the commissioner's decision is prima facie lawful and reasonable. *See Mannone v. Whaland,* 118 N.H. 86, 88, 382 A.2d 918, 919 (1978).

Nationwide argues that the commissioner's use of official notice of facts after the hearing of November 28, 1978, and after the rehearing of March 26, 1979, was in violation of both RSA 400-A:19 and the due process clause of the fourteenth amendment.

■   The primary problem with official notice such as that employed by the commissioner is to ensure disclosure to the opposing party and a fair opportunity for the opposing party to be heard if justice so requires. *Insurance Serv. Office v. Whaland,* 117 N.H. 712, 720, 378 A.2d 743, 748 (1977). Because Nationwide had full opportunity to rebut the commissioner's notice of facts at the rehearing of March 26, 1979, we find no basis for a claim that the use of additional evidence in the decision of December 29, 1978, was improper. *Id. See generally* K. Davis, *Administrative Law* § 15 (3d ed. 1972).

■■   In his order of May 18, 1979, following the rehearing on March 26, 1979, the commissioner appended certain statistical information which he obtained after the rehearing, indicating a decline in the frequency of claims filed in the State in 1978 from the previous year. The subject of claim frequency was an issue raised by Nationwide at both the original hearing and the rehearing. Because Nationwide was not afforded the opportunity to inspect the data and dispute its accuracy, the commissioner's use of such information as a basis for his decision was error. RSA 400-A:19 II (Supp. 1977); *Legislative Utility Consumers' Council v. Public Utilities Comm'n,* 118 N.H. 93, 100, 383 A.2d 89, 93 (1978); *see Society for the Protection of N.H. Forests v. Site Eval. Comm.,* 115 N.H. 163, 168, 337 A.2d 778, 783 (1975). However, we do not find that such error here was prejudicial. There is substantial evidence in the record to support the commissioner's decision without the benefit of such information, and we do not believe that a remand on this issue would alter the result. The doctrine that error must be prejudicial to be reversible applies to decisions of an administrative agency. *See N.L.R.B. v. Heath Tec. Division/San Franciso,* 566 F.2d 1367, 1371–72 (9th Cir. 1978), *cert.*

*denied,* 439 U.S. 832 (1978); 2 AM. JUR. 2d *Administrative Law* § 758 (1962); *cf. Thayer v. Thayer,* 119 N.H. 871, 409 A.2d 1326 (1979).

■ Nationwide contends that the commissioner's orders denying the requested rate increase contained insufficient findings of fact to support his rulings and in the same vein argued that the record did not support the commissioner's decision. The record clearly contained sufficient findings of fact and conclusions based on those facts to enable Nationwide to pursue an adequate appeal. RSA 400-A:23 (Supp. 1977); *see St. Johnsbury Trucking Co. v. State,* 118 N.H. 209, 213, 385 A.2d 215, 217–18 (1978); *Society for Protection of N.H. Forests v. Site Eval. Comm.,* 115 N.H. 163, 173–74, 337 A.2d 778, 786–87 (1975); *Hampton Nat'l Bank v. State,* 114 N.H. 38, 44–45, 314 A.2d 668, 673–74 (1974). Furthermore, the evidence in the record supports the commissioner's decision, and Nationwide has not shown by a clear preponderance of the evidence that his order was unjust or unreasonable. *Mannone v. Whaland,* 118 N.H. 86, 88, 382 A.2d 918, 919 (1978); *In re Jack O'Lantern, Inc.,* 118 N.H. 445, 447, 387 A.2d 1166, 1167–68 (1978); *see In re Nashua Ass'n of School Principals,* 119 N.H. 90, 92, 398 A.2d 832, 834 (1979); *Insurance Serv. Office v. Whaland,* 117 N.H. 712, 715, 719, 378 A.2d 743, 745, 747 (1977).

■ Nationwide argues that the commissioner erred in limiting the rehearing of March 26, 1979, to "new matters." We acknowledge that an administrative rehearing is generally not limited to the production of new evidence and may include reconsideration of the record upon which the original decision was based. *Dumais v. State,* 118 N.H. 309, 311, 386 A.2d 1269, 1271 (1978). However, the record does not support Nationwide's contention that it was prohibited from producing any evidence, old or new.

■ Nationwide finally argues that the commissioner erred in concluding that the requested rate increase was in violation of the President's voluntary wage and price guidelines. The record supports the commissioner's conclusion. Even if the commissioner had erred in this matter, however, we are not of the opinion that such error would warrant reversal because a total denial of the rate increase would in any event be within the guidelines.

*Affirmed.*

BROCK, J., did not sit; the others concurred.