Rockingham
No. 79-301

### LIONEL FECTEAU d/b/a
### FECTEAU INSURANCE AGENCY AND MARY FECTEAU

v.

### GEORGE J. FOSTER & CO., INC.
### AND BURT KEIMACH

June 12, 1980

*R. J. Shortlidge, Jr.,* of Keene, by brief and orally, for the plaintiffs.

*Upton, Sanders & Smith,* of Concord (*John F. Teague* orally), for the defendants.

BROCK, J. This is an action for libel based upon an article published in the defendant corporation's newspaper on March 1, 1974. Trial by jury in the Rockingham County Superior Court

resulted in a verdict for the defendants. During the trial, both parties objected to rulings made by the Trial Court (*Contas,* J.). "All questions of law . . . [and] any exceptions appearing in the transcript or appendix" were reserved and transferred to this court. Accordingly, we consider exceptions taken by either party as being properly before this court. *See Silver v. First National Bank,* 108 N.H. 390, 393, 236 A.2d 493, 495–96 (1967).

On March 1, 1974, an article written by the defendant Keimach was published in the *Foster's Daily Democrat,* a newspaper owned by George J. Foster & Co., Inc. The article, entitled "Conflict of Interest Alleged in Epping", stated that various "sources" in the town of Epping were questioning the propriety of certain actions taken by one of the town's selectmen, Mary Fecteau, in connection with an insurance bill that had been submitted to the town by the Fecteau Agency, which the article portrayed as being owned and operated by Mrs. Fecteau. The article alleged that Mrs. Fecteau had prepared the bill, sent it to the town and then, in her capacity as a selectman, approved the bill and signed a check drawn on the town's account payable to the Fecteau Agency in payment thereof. The "sources" referred to in the article expressed their concern that this course of action involved a clear conflict of interest "because she [Mary Fecteau] had the audacity to submit a bill to the town, and in effect approve her own business", and demonstrated "very poor judgment". The article also described the insurance carrier as being "third rate", and the rates charged by the Fecteau Agency were reported as being "allegedly higher" than those charged by other agencies.

Following the publication of this article, Mary Fecteau and her husband brought this action against the reporter, Keimach, and the publisher. Although Mrs. Fecteau's husband was not mentioned in the article, he was an owner of the Fecteau Agency.

During the course of the trial, the plaintiffs testified in detail concerning the substance of the article. Mary Fecteau admitted that she had indeed participated in the preparation of the insurance bill and later, in her role as selectman, approved it for payment and signed a check drawn on the town's account payable to the Fecteau Agency. She conceded that her actions did not demonstrate "very good judgment". Her husband also testified that she, in effect, ran and operated the agency during normal business hours, while he worked full-time at other employment. The plaintiffs further testified that Mary Fecteau had taken an active role in encouraging the town to purchase additional insurance

from their agency while she was a selectman. Additionally, both their names appear on the application for registration of their insurance agency trade name.

During the course of the trial, the plaintiffs seasonably objected to several rulings of the trial court relating to evidentiary matters. Given the testimony outlined above, however, it appears that the plaintiffs have conceded that the article in question was substantially true. For this reason, we hold that the plaintiffs have failed to show any prejudice arising out of the rulings of the court. *See Appeal of Nationwide Insurance Co.,* 120 N.H. 90, 411, A.2d 1107 (1980). Therefore, we decline to consider their specific exceptions. For us to proceed in any other manner would result in the needless expenditure of already scarce judicial resources.

When a published article involves criticism of public officials in their conduct of public business, the first amendment to the United States Constitution precludes imposing liability on a defendant who publishes, truthfully, the manner in which that business is conducted. *Garrison v. Louisiana,* 379 U.S. 64 (1964). "If upon a lawful occasion for making a publication, he has published the truth, and no more, there is no sound principle which can make him liable, *even if he was actuated by express malice* . . . ." *Garrison v. Louisiana, supra* at 73, *quoting State v. Burnham,* 9 N.H. 34, 42–43 (1837) (emphasis added). Moreover, in this State if the allegedly defamatory article is substantially true and concerns itself solely with the manner in which public officials and private individuals conduct the business affairs of a governmental entity, no liability can attach to the article's publisher. N.H. CONST. pt. 1, art. 22; *see Chagnon v. Union-Leader Co.,* 103 N.H. 426, 437, 174 A.2d 825, 833 (1961), *cert. denied,* 369 U.S. 830 (1962). "Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned." *Garrison v. Louisiana, supra* at 74.

*Appeal dismissed.*

GRIMES, C.J., and KING, J., did not sit; the others concurred.