Merrimack
No. 81-399

## New Hampshire–Vermont Health Service

v.

## Commissioner of Insurance

March 22, 1982

270

*Joseph Stewart*, general counsel, New Hampshire-Vermont Health Service, and *Upton, Sanders & Smith*, of Concord (*Mr. Stewart* and *Richard F. Upton* on the brief, and *Mr. Upton* orally), for the plaintiff.

*Gregory H. Smith*, attorney general (*Ronald F. Rodgers*, attorney, on the brief and orally), for the commissioner of insurance.

DOUGLAS, J. This case requires us to construe the powers and duties of the insurance commissioner under RSA 420-A:11 (Supp. 1979).

In April 1981, the commissioner of insurance began his annual rate review of the plaintiff New Hampshire-Vermont Health Service, a Blue Cross-Blue Shield plan doing business in New Hampshire. The annual rate review is mandated by RSA 420-A:11 (Supp. 1979), which requires that "[a]nnually, in the month of April, the insurance commissioner shall review the rates of every [nonprofit health service] corporation, and shall, not later than sixty days after the first of April of each year, provided that the corporation has filed all pertinent data, make adjustments thereto, if any, as are just and reasonable."

Because the plaintiff was particularly concerned about rebuilding its contingency reserve, which had dwindled to zero, it filed a motion with the commissioner dated April 23, 1981, requesting that the commissioner, during his rate review, "give consideration to the need for rebuilding the contingency reserve" and make "appropriate findings" on this issue. The commissioner sent a preliminary draft of his report to the plaintiff in early June 1981. The plaintiff received the final report in August 1981. Neither report addressed the plaintiff's contingency reserve.

The plaintiff brought an action for a writ of mandamus and/or a declaratory judgment in superior court, alleging that the insurance commissioner failed to fulfill his duty under RSA 420-A:11 (Supp. 1979) to provide an annual rate review of the health service and to make rate adjustments that would permit the health service to accumulate and maintain a contingency reserve. Without ruling, the Superior Court (*Johnson*, J.) transferred the plaintiff's questions of law to this Court. We address them in order.

I. "Are the provisions of RSA 420-A:11 . . . mandatory, or, if not wholly mandatory, what provisions are discretionary?"

 In determining legislative intent, we begin by examining the language of the statute itself. *Silva v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 302 (1980). RSA 420-A:10 (Supp. 1979), which immediately precedes RSA 420-A:11 (Supp. 1979), requires a nonprofit health service corporation to "collect reasonable rates as described in RSA 420-A:11, designed to permit it to accumulate and maintain a contingency reserve fund." Under RSA 420-A:11 (Supp. 1979), the insurance commissioner *"shall* review" the rates of every nonprofit health service corporation annually and *"shall . . .* make adjustments . . . as are just and reasonable." Whenever the corporation's contingency reserve fund is less than eight percent of its annual premium income, the commissioner *"shall* permit" the corporation to charge rates enabling it to increase its contingency reserve to a certain level. RSA 420-A:11 (Supp. 1979). The word "shall" also appears repeatedly throughout all other provisions addressing the contingency reserve in RSA 420-A:11 (Supp. 1979).

 The word "shall," generally regarded as a command, *Silva v. Botsch*, 120 N.H. at 601–02, 420 A.2d at 302, indicates that a statute was intended to be mandatory. *In re Russell C.*, 120 N.H. 260, 264, 414 A.2d 934, 936 (1980). Interpreting "shall" to mandate certain actions by the commissioner does not lead to an absurd, unjust, or illogical result; it is not inconsistent with the general purpose of the statute; and we do not conclude from the context of the statute that the legislature intended a different meaning. *Id.*, 414 A.2d at 936. This conclusion is bolstered by the fact that the legislature used the word "may" in the final sentence of RSA 420-A:11 (Supp. 1979) to indicate that the commissioner has discretion with regard to the issuance of "reasonable supplemental orders." Consequently, we conclude that the annual April review is mandatory. Additionally, in his review, the commissioner must examine whether a rate adjustment is needed in order to bring the contingency reserve fund within the statutorily prescribed limits.

II. "Does RSA 420-A:11 require the commissioner to act on his own motion or must any action on rates first be triggered by a formal request for specific rate relief . . . ?"

 The mandatory language of RSA 420-A:11 (Supp. 1979) requires the commissioner to *initiate* the rate review annually in April and to adjust a corporation's rates if its contingency reserve

fund is higher or lower than the levels set by the statute. "Annually, in the month of April, the insurance commissioner *shall review* the rates of every such corporation. . . ." RSA 420-A:11 (Supp. 1979).

■ We also find that a formal request for specific rate relief is unnecessary because RSA 420-A:11 (Supp. 1979) expressly distinguishes the annual rate review from other rate change proceedings which the corporation must initiate: "This section shall not preclude the granting of appropriate rate changes at any other times." RSA 420-A:11 (Supp. 1979).

> III. "Is the commissioner required by law seasonably to prepare and communicate to the [nonprofit health service corporation] written findings and conclusions relating to the subject of annual rate adjustments (RSA 420-A:11)?"

■ For the following reason, we conclude that written findings and conclusions are essential. All orders and decisions of the commissioner concerning RSA 420-A:11 (Supp. 1979) are subject to appeal under RSA ch. 541. RSA 420-A:12 (Supp. 1979). Our inquiry under RSA 541:6 on such an appeal is whether the party seeking to set aside a commission's order "has demonstrated by a clear preponderance of the evidence that such order is contrary to law, unjust, or unreasonable." *LUCC v. Public Serv. Co. of N.H.*, 119 N.H. 332, 340, 402 A.2d 626, 632 (1979).

■■ We have held in the context of an RSA ch. 541 appeal that the commission is "under an obligation to set forth its methodology and findings fully and accurately in order that this court may undertake meaningful judicial review of its methods, findings, and order." *Id.* at 341, 402 A.2d at 632. Because a decision or order concerning RSA 420-A:11 (Supp. 1979) is subject to review under RSA ch. 541, the principles concerning findings are applicable to RSA 420-A:11 (Supp. 1979). Thus, the commissioner's methodology and findings must be written and made available "not later than sixty days after the first of April of each year, provided that the corporation has filed all pertinent data . . . ."

> IV. "What basic issues is the commissioner . . . legally required to address and make appropriate findings thereon, in reaching his ultimate conclusion as to what rate adjustments, if any, should be made pursuant to RSA 420-A:11?"

This court has previously acknowledged that rate-making is a "technical and highly complex process requiring much expertise." *Insurance Serv. Office v. Whaland*, 117 N.H. 712, 716, 378 A.2d 743, 746 (1977). Rate-making is a function of the insurance commissioner, not the courts. *Id.* at 717, 378 A.2d at 746. Consequently, we refuse to prescribe specific necessary findings. One general principle, however, is applicable. "When the ultimate conclusion to be reached is the fixing of a rate of return for a . . . medical service corporation specific findings on the various elements which are considered to fix the rate must be made . . . to permit an adequate appellate review." *Hampton Nat'l Bank v. State*, 114 N.H. 38, 44, 314 A.2d 668, 673 (1974). The insurance commissioner must include specific basic findings in support of his ultimate conclusion. *See Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 759, 423 A.2d 603, 607 (1980); *Appeal of Nationwide Ins. Co.*, 120 N.H. 90, 95, 411 A.2d 1107, 1110 (1980). Accordingly, specific basic findings must accompany any order providing for a rate adjustment which is made under RSA 420-A:11 (Supp. 1979) to bring a corporation's contingency reserve fund to the proper level.

V. "Does the commissioner have the power under RSA 420-A:11 to deny annual rate adjustments designed to provide a contingency reserve which meets the standards set by said section 11?"

For the following four reasons, we conclude that the commissioner does not have the power to deny an annual rate adjustment. First, although there is no legislative history on the point, RSA 420-A:11 (Supp. 1979) appears to have been enacted to establish a contingency reserve fund that falls within certain mathematically prescribed limits. Prior to its enactment, contingency reserve levels were not set by statute. Because the proper level was uncertain, the issue was the subject of dispute. *See N.H.-Vt. Hosp. Serv. v. Whaland*, 114 N.H. 92, 94–97, 315 A.2d 191, 192–94 (1974); *N.H.-Vt. Physician Serv. v. Durkin*, 113 N.H. 717, 723–24, 313 A.2d 416, 418–21 (1973). RSA 420-A:11 (Supp. 1979) addressed this problem by requiring the insurance commissioner to adjust a corporation's rates when its contingency reserve fund level did not fall within the specified range. From this history, we infer that the commissioner is not empowered to deny rate adjustments when contingency reserve fund levels do not meet with the requirements of the statute.

Second, as discussed *supra*, the statute's language is mandatory:

"*Whenever* the contingency reserve fund of such corpora-

tion shall be less than eight percent of its annual premium income, the commissioner *shall permit* the corporation to charge rates designed to enable it to increase its contingency reserve fund by an amount equal to at least two percent of the annual premium income of the corporation. If the liabilities of such corporation exceed its assets, however, the commissioner *shall permit* the corporation to charge rates designed to enable the corporation to accumulate such a reserve fund by an amount equal to at least five percent of the annual premium income of the corporation until such time as the assets of the corporation equal its liabilities. In no event shall the commissioner permit the corporation to charge rates which would result in a reserve fund in excess of 16 percent of the annual premium volume of the corporation."

RSA 420-A:11 (Supp. 1979) (emphasis added).

Third, the legislature used "may" in the last sentence of the statute when discretion was intended. It chose to use "shall" in the above-quoted section which addresses the contingency reserve fund.

Fourth, as noted in *New Hampshire-Vermont Hospital Service v. Whaland*, 114 N.H. at 94, 315 A.2d at 192, a contingency reserve fund is the only protection a nonprofit health service corporation has against temporary insolvency due to large claims arising from "catastrophe, epidemic, or serious economic dislocation." Thus, a contingency reserve fund is important to a corporation's economic well-being. We conclude that the commissioner must grant an annual rate adjustment when a corporation's contingency reserve fund is insufficient.

██ ██ Although the statute mandates that the commission adjust rates whenever a corporation's contingency reserve fund fails to fall within the statutory range, the legislature did not intend to eliminate the commissioner's supervisory powers. The statute provides that "[i]n connection with a rate decision, the commissioner may also make reasonable supplemental orders to the corporation and may attach reasonable conditions and limitations to such orders as he finds, on the basis of competent and substantial evidence, necessary to insure that benefits and services are provided at minimum cost under efficient and economical management of the corporation." RSA 420-A:11 (Supp. 1979). This sentence commendably authorizes the commissioner to supervise nonprofit health service corporations and curtail inefficient prac-

tices, excessive administrative expenditures, excessive payments to subscribers, and any other practice which unnecessarily increases the costs of benefits and services. "Reasonable supplemental orders" and "reasonable conditions and limitations" may be issued *"in connection with"* a rate decision, but they may not be made conditions precedent to a rate increase under RSA 420-A:11 (Supp. 1979).

> VI. "If such 'reasonable conditions and limitations' established under RSA 420-A:11 are not complied with by the [corporation], what sanctions may the commissioner apply?"

 No sanctions are included in the statute. Imposition of sanctions is a matter for the legislature, not this court.

> VII. "Does the report of examination and annual review dated as of May 1, 1981 . . . comply with the requirements of RSA 420-A:11?"

 The May 1981 report does not comply with the statute. It does not address the plaintiff's contingency reserve fund.

 The plaintiff petitioned the superior court for either a writ of mandamus or a declaratory judgment. We find it unnecessary to issue a writ of mandamus against a State officer, the commissioner of insurance in this case, because "[w]hen the law is settled it will be obeyed." *Brouillard v. Governor and Council,* 114 N.H. 541, 544, 323 A.2d 901, 903 (1974) (citations omitted). This case, therefore, is one for declaratory judgment. Having answered the transferred questions, we remand to superior court.

*Remanded.*

BROCK, J., did not sit; the others concurred.